### MAHONEY v. PITMAN.
#### No. 3672.

Court of Civil Appeals of Texas. Amarillo.
Oct. 28, 1931.

Rehearing Denied Nov. 18, 1931.

144

Hoover, Hoover & Cussen, of Canadian, for appellant.

W. H. Russell, of Hereford, for appellee.

RANDOLPH, J.

This suit was instituted by appellee to recover from appellant commissions alleged to be due him by appellant. A jury was dispensed with, and the court, having heard the case on its merits, rendered judgment for the plaintiff, and from this judgment defendant Mahoney has appealed to this court. The parties will be styled as in the trial court.

The plaintiff in his petition alleges:
"That he is engaged in the real estate brokerage business, that is, principally selling lands for others, and was so engaged during all the times mentioned herein; and that on and prior to the 27th day of May, A. D. 1929, the defendant herein, H. O. Mahoney, listed with plaintiff certain lands situated in Deaf Smith County, being Sections 15, 16, 19 and 20, in Block K-14, that is, authorized plaintiff to find a purchaser for said lands; said plaintiff being authorized to find such purchaser and defendant to make price and terms of sale.

"That on or about said May 27, 1929, the plaintiff interested one Joe Beckman in the purchase of said lands, the said Beckman informing the plaintiff and the defendant that he did not wish to purchase said lands at that immediate time, but preferred to lease the same, with an option to purchase said lands, and that he would probably purchase said lands before his lease expired, whereupon said defendant and said Beckman entered into a written lease agreement and said agreement granted to said Beckman the right to purchase said lands. * * * That thereafter the defendant and the said Joe Beckman entered into a further contract by the terms of which defendant gave to said Beckman the exclusive right to purchase said land. * * *

"That thereafter on or about March 4, 1930, the said Beckman exercised with defendant his option to purchase and upon terms mutually satisfactory to said parties, the said Beckman paying the price of $58,032.00 for said land, the terms of sale being arranged to suit said parties and on said date said lands were conveyed to said Beckman, being taken in the names of Joe Beckman and W. H. Beckman. * * * Whereby defendant became bound and liable and agreed to pay to plaintiff reasonable compensation in so selling said land, or for his services in so finding a purchaser as aforesaid.

"Plaintiff further pleads that the defendant agreed to pay him the sum of five per cent. of the gross selling price of said land, or the sum of $2,901.60, as a commission for his services in so finding a purchaser.

"Plaintiff further pleads that if he be mistaken as to defendant agreeing to pay said five per cent. commission, then plaintiff says there was an implied agreement by defendant to pay plaintiff reasonable compensation for his services in so finding said purchaser; and plaintiff will show that a reasonable compensation for such services is the sum of five per cent. on the gross selling price of said land, which is also the usual and customary commission paid by the seller of the land to an agent procuring a purchaser."

Defendant filed his answer herein, consisting of a general exception, special exception, and a general denial.

In support of his petition, the plaintiff testified that he wrote the following letter to Mahoney, and same was introduced in evidence:

"May 6, 1929.
"Mr. H. O. Mahoney, Leavenworth, Kansas.

"Dear Mr. Mahoney: Have showed your four sections of land several times since getting your last letter. Thought sure I had sold it to the party from Wellington, Texas, but he failed to get his money.

"I tried to sell it Saturday to a German and he was afraid to involve himself too much. Said he might be able to buy it a little later if not sold.

"Said he would lease it for three years at $1,400.00 per year and if leased for this year, his lease could start next year. I told him I did not know what you were getting for the place and would send you his bid. * * *"
(Signed by J. H. Pitman.)

The plaintiff thereafter testified in substance:

That he had occasion to be familiar with various lands in Deaf Smith county and was familiar with the lands involved in this suit. In connection with that land, there were four sections of it. He did not know the legal description of it. Was acquainted with Mr. Joe Beckman, and had known him six or seven years. Had a talk with Mr. Beckman about the sale of this Mahoney land. The talk he had with Beckman with reference to that was this, he took Mr. Beckman out and showed him the land for the purpose of selling it to him, and Beckman told him then that he would rather not buy it now, but would lease it, and that he would buy it later on, if it proved to be all right. Plaintiff conveyed this fact to Mr. Mahoney. Later on, after he saw Mahoney, he told Mahoney, and he took Mr. Beckman out there and showed it to him, and that he (Mr. Beckman) would lease it if he would lease it to him and that he would buy it later on. That he then took Mr. Mahoney to see Mr. Beckman and they discussed the matter. Mr. Beckman leased the land, and a little later on bought it.

As to what he did with reference to taking Mahoney out to see Beckman, he and his daughter went out there in their car, and plaintiff went out there in his car. When he got there, he introduced Beckman to Mahoney. So far as he knew, they were not acquainted with each other up to that time. That Mahoney and plaintiff had no specific agreement about a commission. Neither have they had any such agreement since that time. The witness testified that the usual and customary commission in the sale of land is 5 per cent.

Plaintiff testifies further that Mahoney had this land listed with him, and that he got in touch with Mr. Beckman by driving out there to sell him the land. He went to town and interested Beckman about buying this land and trying to sell it to him for Mahoney. Beckman did not come to him, but he went out there to see Beckman. Beckman said he did not know whether he would buy it or not, but that he would go down and look at it, and that he would lease it, and later on, if it proved to be all right, would buy it. He gave him a. price of $22.50, but that was not the listed price. The list price was $21. The witness testifies that he tried to sell the land to Beckman first, but Beckman said he would rather lease it before he bought it. After his conversation with Beckman, he wrote Mahoney the letter set out above. Mahoney said he would come down here, and did come down here and went out right away to see Mr. Norton. Mr. Norton was still on the land at this time, having had it leased, and witness did not come with Mahoney to see Mr. Norton, but did go with Mahoney to see Beckman. When they went to see Beckman, he leased the place from Mahoney.

When Mahoney and witness went out to Beckman's, witness made Mahoney acquainted with Beckman, and they went ahead together, and agreed to lease it, provided they could make it satisfactory with Mr. Norton. Norton was still on the place. He did not know at that time whether Mr. Norton got off the place or not. There was a lawsuit to get Norton off the land, but Mahoney and Beckman entered into this contract at that time. He thinks that the contract showed him is the one that was signed at that time, dated May 27, 1929. This contract provided for an option, and there was another contract entered into by them. He was present when the first contract was made, but not the last. When this lease contract was entered into on May 27, 1929, witness had done all that was required of him to do in connection with finding a purchaser, and found one in the person of Mr. Joe Beckman, who said he would buy the land later, and he also stated that he preferred to lease the land, and that was all satisfactory with Mahoney.

The contract dated May 27, 1929, between H. O. Mahoney and Joe Beckman, and signed by each of them, provided for the leasing of the land for the sum of $1,500 annually for a term of five years, the lease terminating on the 15th of February, 1935, leasing to Beckman the land hereinabove described, and also contains the provision reserving the right on the part of the lessor to sell the land at any time, and providing also that, should Mahoney find a purchaser, Beckman has an option of buying same. As stated, this contract was signed by H. O. Mahoney and Joe Beckman. On the 11th day of July, 1929, Mahoney and Joe Beckman entered into another contract based upon a consideration set out granting to Beckman the exclusive right to purchase the lands referred to in the contract of May 27, 1929, and reciting that it is further understood and agreed that, if Beckman should exercise his option or privilege, the consideration to be paid for the above land was to be $21 per acre, etc. Plaintiff further testified that the land was afterwards sold to Beckman about six or seven months after the signing of the first contract.

From this evidence it appears that the plaintiff procured a purchaser for the land who, though not able at the time to close the deal, did enter into a contract of lease with an option to purchase, which contract and option was signed by the defendant, and that the purchaser exercised his option by closing a deal for the land within ten months after making the first contract and about eight months after the execution of the second option contract. There can be no reason why the plaintiff should not be entitled to his commission because of the delayed performance by the purchaser with the consent of the defendant.

■ The defendant's first assignment of error is the court erred in rendering judgment for the plaintiff, for the reason that the plaintiff, by the allegations of his petition, based his right to the commission because Mahoney, as owner of the land in controversy, listed said lands with the plaintiff as with a real estate agent engaged in selling lands for others, and authorized the plaintiff to find a. purchaser for said land, and that the defendant would make prices and terms of sale, and that plaintiff found a purchaser in the person of Joe Beckman, in accordance with such terms of listing of said lands with plaintiff by the defendant, and the undisputed evidence showed that the defendant Mahoney was himself an agent only for the sale of said lands, and conveyed the said lands by power of attorney for the owners, and plaintiff was not entitled to recover against the defendant on his cause of action as pleaded and the proof as so made.

This assignment does not properly present plaintiff's pleading. The plaintiff's cause of action was not against the defendant as the owner of the land, about which the record in

this case was silent until the deed was executed and delivered to the Beckmans, but the cause of action was based upon an alleged contract made by Mahoney to produce a purchaser for said lands. The evidence shows that Mahoney made such contract in his own name, and the work of finding a purchaser was done by the plaintiff in full reliance on said contract. In making the lease contract with Beckman, Mahoney signed and executed same in his own name, and no reference was made to any others as owners of the lands. In the second contract Mahoney stipulates himself as being of San Diego, Cal., as first party. When he executes the deeds to the land to Beckman & Son, he does so in the name of other parties, by himself as attorney in fact and for himself individually. The wording of the deed indicates that Mahoney was owner of a part interest in the land. If not, why does he execute the deed "individually" as well as attorney in fact?

However, be that as it may, the fact that he represented undisclosed principals as agent and attorney in fact was not brought forward and made known to the plaintiff, so far as this record discloses, until the filing of the deed to Beckman, long after the plaintiff had performed his part of the contract.

"It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of the principal, to disclose not only the fact that he is acting in a representative capacity but also the identity of his principal, as the person dealt with is not bound to inquire whether or not the agent is acting as such for another." 2 C. J. 816, § 49.

"An agent who enters into a contract in his own name without disclosing the identity of his principal renders himself personally liable even though the third person knows that he is acting as agent, unless it affirmatively appears that it was the mutual intention of the parties to the contract that the agent should not be bound, and in some jurisdictions this rule is made the subject of statutory provision in regard to certain classes of agents. This rule applies, although the agent was not particularly requested to disclose his principal. * * *" Id. 817, 818.

"It is sufficient to relieve the agent from liability, if the disclosure of the fact of the agency and the identity of the principal is made before or at the time the contract is entered into, or before liability is incurred on either side. But a disclosure made after the transaction has been practically *brought to a close* (emphasis ours) and liabilities incurred, comes too late to relieve the agent from liability." Id. 818, § 493.

"The rule is settled that an agent who does not disclose the fact of his agency, and contracts as the ostensible principal, is liable in the same manner and to the same extent as though he were the real principal in interest; and, of course, he is liable also if he represents himself to be the principal in the transaction. * * * Knowledge of the real position of affairs, acquired after a cause of action has accrued, cannot affect the right to recover from the agent personally. * * *" 2 Tex. Jur. 583, § 172, and authorities cited therein.

█ It is true that the purchaser Beckman declared himself unable to buy the land and desired to lease it only, and stated that he might buy it later. But, as Mahoney accepted his contract of lease and granted him an option to purchase, which option was later consummated by the owners executing and delivering a deed to the Beckmans, proof of ability to purchase on the part of Beckman was waived by their acceptance of Beckman as such purchaser. Especially is that true when the contract with plaintiff was that he was to produce the purchaser and Mahoney was to fix the prices and terms. 2 Tex. Jur. 465, § 69.

Under this last authority, when the agent produces a purchaser and the seller accepts him and enters into a contract with such purchaser, the legal conclusion is that the agent is entitled to his commission. It is true that the evidence showing the circumstances of a contract between Mahoney and the plaintiff is conflicting. Mahoney denies that he entered into any contract with the plaintiff beyond the leasing of the land, and says: "I told several real estate men what my price was. I intended to tell them all. I told them that I should get half of the commission. I might have told Mr. Pitman that and I might have neglected to tell him that—but I know that that was my intention."

█ While the evidence is conflicting, the court having tried the case in lieu of a jury upon the facts, and there being evidence to support his conclusion, we cannot disturb his findings of fact.

We have examined all assignments of error, and, finding no reversible error, we affirm the trial court's judgment.