**VINCENT MURPHY CHEVROLET COMPANY, Inc., Appellant,**

v.

**AUTO AUCTION, INC., Appellee.**

No. 4135.

Court of Civil Appeals of Texas.

Eastland.

March 10, 1967.

Rehearing Denied April 7, 1967.

———◆———

Thornton, Thornton & Fisher, R. E. Thornton, Olney, for appellant.

Key, Carr & Clark, Donald M. Hunt, Lubbock, for appellee.

COLLINGS, Justice.

Auto Auction, Inc., a California corporation, brought suit against Vincent Murphy Chevrolet Company, Inc. of Archer City, Texas, and Norman Cadle for breach of an implied warranty of title to an automobile sold to plaintiff and on the agreement of the Chevrolet company to indemnify subsequent purchasers. Cadle did not answer and an interlocutory default judgment was rendered against him. Vincent Murphy Chevrolet Company, Inc. filed a general denial. After the filing of depositions and affidavits by both parties, plaintiff moved for a summary judgment against the Chevrolet company for its breach of warranty and prayed that the interlocutory judgment against Cadle be made final. The Chevrolet company filed an affidavit in opposition to the motion for summary judgment and prayed that in the event judgment should be rendered against it that it

should have a like judgment against Cadle. Cadle made no answer to the cross claim and upon a hearing of the motion for summary judgment, judgment was rendered jointly and severally against the Chevrolet company and Cadle. The Chevrolet company was granted a like judgment over against Cadle. Vincent Murphy Chevrolet Company has appealed.

The record shows that appellee Auto Auction, Inc. does business under the names of Los Angeles Auto Auction and Los Angeles Dealer Auto Auction. It acts as a clearing house for new and used car dealers, handles automobiles on a commission basis, taking title from the seller and passing title to the buyer. Harold C. Henry, one of the affiants to appellee's motion for summary judgment, is appellee's president and Tom Ellis, another affiant, is appellee's general manager. The president of appellant, Vincent Murphy Chevrolet Company, Inc., is Vincent Murphy and its vice president is Dale Murphy. It is undisputed that on or about November 13, 1963, Norman Cadle contacted appellant's president, Vincent Murphy, and requested appellant to finance the purchase of five Cadillac automobiles which Cadle desired to purchase from E. R. Broom. It is shown that Cadle and appellant agreed that appellant would finance the purchase of such automobiles, including the one here in question and would hold open titles thereto until they were sold by Cadle; that appellant would receive the proceeds of the sales and apply same to the amount owed to it by Cadle; that when the full amount of Cadle's debt, including financing costs, was repaid any additional amounts received would belong to Cadle. It is undisputed that Broom delivered titles to the automobiles to appellant at its office in Archer City and was paid $15,000.00 therefor by appellant.

Thereafter Cadle came to appellant's office and signed a chattel mortgage note in the amount of $15,000.00 covering the purchase price of the five automobiles. Under the agreement between the parties appel-

lant was to hold the title to such automobiles as agent for Cadle and deliver them upon Cadle's order. Appellant asserts that Cadle was never authorized to represent it or to represent to others that he was working with or for it. Appellee admits that it can not establish that appellant was not Cadle's agent but asserts that it had no knowledge of the existence of such agency, and that Cadle's representations, which it believed, were to the contrary.

The record shows that appellee's first connection with the matter involved was on November 16, 1963, when Norman Cadle delivered a 1963 Cadillac 6 passenger coupe DeVille with 1963 license plates for the State of Nebraska to appellee's general manager, Tom Ellis. Cadle represented to Ellis that he was working for appellant, delivering and selling automobiles and that the Cadillac in question was owned by appellant, and that he was authorized by appellant to sell such automobile. At that time Ellis agreed to purchase the Cadillac for appellee and neither he nor appellee had any knowledge concerning the arrangement between appellant and Cadle except what Cadle told him. Ellis believed that appellee was purchasing the automobile from appellant and contracted for appellee on that basis. Ellis thereupon agreed with Cadle, on appellee's behalf, to purchase the Cadillac for $4123.09 and the automobile was left with appellee for resale. Three days later appellee, believing that it had title to the automobile, sold it to Shattuck Avenue Motors in Berkeley, California.

Appellant was informed by Cadle that he had sold the Cadillac in question to appellee. Under instructions from Cadle appellant thereupon endorsed the title to appellee and executed certain other title papers required by the State of California. The title documents did not arrive in California until a few days later. Included in such title documents, which were dated November 23, 1963, was a bill of sale executed solely by appellant Vincent Murphy Chevrolet Company by the signature under oath

of Dale Murphy. The bill of sale recited a consideration of $10.00. It purported to sell to appellee appellant's right, title and interest in and to the automobile in question. It warranted that appellant was the owner of said vehicle, warranted title thereto and that it was free from any liens and encumbrances. Another title document bearing the same date was the State of California Department of Motor Vehicles' statement of facts. This document bearing appellant's signature by Dale Murphy under oath recited that the vehicle in question entered California on November 16, 1963, on Texas dealers' license P8402; that appellant agreed to indemnify and save harmless subsequent purchasers of said vehicle from loss. Also among the title documents was the dealers' reassignment of title of the same date executed under oath by appellant by said Dale Murphy, reciting that appellant for value received did sell and assign to appellee the motor vehicle in question and did warranty the title of said vehicle to be free of all liens and encumbrances, except as noted on the face of the title. After appellee had received and examined the above described title documents and in reliance upon same and the representations made by Cadle, it executed its check payable to appellant in the amount of $4,123.09. The check was sent to appellant in payment of the Cadillac in question, was received, endorsed and cashed by appellant and returned to appellee through regular banking channels. It is undisputed that Dale Murphy executed the title documents for appellant and there is nothing in the record showing that appellant ever communicated to appellee the fact that appellant was only a financing agent for Cadle.

The record further shows that the automobile in question was a stolen car, the theft having occurred prior to and without the knowledge of any of the parties hereto. It is undisputed that appellee was required to pay $4,000.00 to the U. S. Fidelity & Guaranty Company to make good on the title.

Appellant presents points urging that the court erred in granting summary judgment against it, contending that (1) there is a fact issue as to whether or not Norman Cadle was an express or implied agent of appellant, and (2) a question of fact or a question of interpretation of the facts as to whether or not Cadle had ostensible or apparent authority to deal with appellee as agent for appellant. These points are overruled.

Controlling in our opinion are the undisputed facts that appellant Vincent Murphy Chevrolet Company, Inc. advanced the money for the purchase of the automobile, and for its protection acquired a lien thereon, placed Cadle in possession of the vehicle and allowed him to put it on the open market for sale, thereby making it possible for Cadle to appear as the agent of appellant authorized to sell said automobile; that appellant then signed title papers representing and asserting under oath that it was the lawful owner of the automobile, warranting and guaranteeing title thereto, and that it would indemnify subsequent purchasers against loss; that appellee relied upon such facts and representations and ostensible authority of Cadle, paid to appellant and appellant received as the purchase price of said automobile $4,129.09. Although appellant asserts that it was only an agent of Cadle the title papers did not disclose that appellant had signed same in a representative capacity, and it is undisputed that appellant did not disclose the fact of its agency to appellee Auto Auction, Inc. Since it is undisputed that appellee did not know that appellant was acting only as agent for Cadle, appellant became personally liable by signing its name under oath as owner and by failing to disclose its principal. In Mahoney v. Pitman, 43 S.W.2d 143 (Tex.Civ.App. 1931, writ ref.), the rule is stated as follows:

"It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of the prin-cipal, to disclose not only the fact that he is acting in a representative capacity but also the identity of his principal, as the person dealt with is not bound to inquire whether or not the agent is acting as such for another."

See also Lachmann v. Houston Chronicle Publishing Company, 375 S.W.2d 783 (Tex. Civ.App.1964 n. r. e.), and authorities cited therein.

Even if it should be found that appellee knew or that there was a question of fact concerning whether appellee knew that appellant was only the agent of Cadle, still appellant would be liable because it personally obligated itself to protect its own interest. It is bound by such obligation. Appellant had an interest of its own to protect in that it furnished the purchase price of the automobile. It retained open title so that the signing of its name was necessary to pass title. Since it assumed individual responsibility for its own protection, appellant was bound by its warranties, guarantees and indemnities. In American National Bank v. American Loan and Mortgage Company, 228 S.W. 169 (Tex.Com. of App.1921) the rule is stated as follows:

"An agent, although his agency is known and who has authority to bind his principal through contract, is not precluded from binding himself personally upon such contract. Where upon a construction of the contract it is determined that the agent has substituted his own responsibility for that of his principal, or has pledged his own responsibility in addition to that of his principal, he will be bound accordingly. His liability is not predicated upon his agency, but upon his contract obligations."

The following cases indicate the correctness of the rule above announced: Hogue v. Wilkinson, 291 S.W.2d 750 (Tex.Civ.App. 1956, no writ history); Land Title Bank & Trust Company v. Witherspoon, 126 S.W.2d 71 (Tex.Civ.App.1939, no writ his-

tory); Dublin Fruit Company v. Neely, 182 S.W. 406 (Tex.Civ.App.1916, no writ history); Merchants' and Planters' National Bank v. Jones, 173 S.W. 606 (Tex.Civ. App.1915, no writ history).

Appellant's points are overruled. The judgment is affirmed.