Clyde K. CARTER and W K D & C, Inc.,
Appellants,

v.

Irving WALTON d/b/a Walton Neon
Company, Appellee.

No. 601.

Court of Civil Appeals of Texas,
Corpus Christi.

May 27, 1971.

Rehearing Denied June 17, 1971.

**464**

Simon & Simon, Harold D. Hammett, Fort Worth, for appellants.

Porter, Taylor & Gonzalez, Charles R. Porter, Jr., Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is primarily an agency case and the main point involved in this appeal is wheth-

er the principals were disclosed or undisclosed.

Irving Walton, d/b/a Walton Neon Company, as plaintiff, sued Tally-Ho Motor Hotel, Inc., W K D & C, Inc., G J & W Investments, Inc., and Clyde K. Carter as defendants. W K D & C, Inc., as cross-plaintiff, filed a counterclaim against plaintiff. The trial court instructed a verdict in favor of plaintiff on the counterclaim. After a trial before a jury, but prior to the entry of judgment, plaintiff took a non-suit with prejudice as to the defendants W K D & C, G J & W Investments, Inc., and Tally-Ho Motor Hotel, Inc. The jury answered all issues favorably to plaintiff, who then elected to take, and did take a personal judgment against Clyde K. Carter.

W K D & C, Inc. has appealed from the judgment that it take nothing on its counterclaim and Clyde K. Carter has appealed from the judgment entered against him. The parties will be referred to either by name, or by plaintiff with respect to Walton, by defendant with respect to Carter, or by cross-plaintiff with respect to W K D & C, Inc.

It is admitted by Carter that at all times pertinent to this lawsuit he was an officer and an agent of W K D & C, Inc. and of G J & W Investments. It is undisputed that he was not an agent of Tally-Ho Motor Hotel, Inc.

It is established by the evidence that the contracts upon which plaintiff sued were signed by Henry Price, but were negotiated by and between Carter and the plaintiff, Walton. It is plaintiff's contention that Carter is either a party to the contracts or that he acted as the agent for his undisclosed principals. Carter contends that he acted solely as an agent for fully disclosed principals. Therefore, unless Carter is liable as a contracting party, then his liability depends upon whether or not his principals were disclosed to plaintiff at the time the contracts were made and the materials and services were furnished. In deciding this issue, we must be guided not only by the

evidence adduced at the trial but by the pleadings as well. A rather detailed resume of both the evidence and pleadings is necessary.

We are here concerned with the original Viking Motor Hotel, located near Portland, Texas, and the original Tally-Ho Motor Hotel, located in Corpus Christi, Texas. W K D & C, Inc. purchased the Viking Motor Hotel sometime between March 1968 and August 30, 1968; during the same interval of time, G J & W Investments, Inc. purchased the Tally-Ho Motor Hotel. On May 15, 1968, a written lease was executed by and between Park Central Apartments, Inc. (the predecessor in title of G J & W Investments, Inc.), as lessor, and Henry Price, as lessee, covering the original Tally-Ho Motor Hotel. On August 31, 1968, a written lease was executed by W K D & C, Inc., as lessor, and the same Henry Price, as lessee, covering the original Viking Motor Hotel.

Plaintiff did not learn that these hotels were owned by the aforesaid corporations or that they were under lease to Price until after he filed this suit.

After the purchase of the Hotels, it was decided that the original Viking would be renamed "Tally-Ho East Motor Hotel" and the original Tally-Ho would be renamed "Tally-Ho West Motor Hotel"; this required the construction of a new sign for the original Viking and a revision of the then existing sign for the original Tally-Ho. In August 1968, Price contacted plaintiff and told him that a new sign was required for the Viking, and following a personal conference between the two on August 21, 1968, when Price told plaintiff that Carter was one of the owners of the hotel, plaintiff prepared preliminary drawings of the new sign.

On August 30, 1968, plaintiff went to the Tally-Ho Motor Hotel, and was introduced by Price to Carter. The drawings for the contemplated sign were then examined by Carter, who after some discussion with plaintiff, decided that they were

not satisfactory. He then outlined his requirements to plaintiff and requested that plaintiff redesign the sign at once as he (Carter) had to get back to Fort Worth without delay. Whereupon, plaintiff returned to his place of business, went to work, and in the afternoon of the same day completed the new drawings and returned to the Tally-Ho, where he again met with Price and Carter. The three of them drove to the airport and Carter and plaintiff studied the new drawings on the way. Carter asked all of the questions; plaintiff answered the questions; Price took no part in the discussion and made no decision on any matter. The drawings and plans for the new sign, as redesigned, were approved by Carter. Plaintiff handed Carter a written proposal concerning the new sign for the old Viking Motor Hotel, to be renamed "Tally-Ho East Motor Hotel". Carter approved the proposal, said that the contract price was satisfactory, and told plaintiff "when you finish, your money will be waiting for you". Carter did not sign the proposal at that time and took it back to Fort Worth with him; he never delivered the signed proposal to plaintiff and did not execute it in his presence.

On September 4, 1968, plaintiff went to see Price at the Tally-Ho and took with him three proposed contracts, which were sued upon by plaintiff and were introduced in evidence at the trial as plaintiff's exhibits 7, 8 and 9; exhibit 7 concerned the new sign for the Tally-Ho East; exhibit 8 concerned the temporary sign for the Tally-Ho East; exhibit 9 concerned the revision of the existing sign for the Tally-Ho West. The proposed contracts were all dated "9-3-68", submitted to "Tally-Ho Motor Hotel", attention "Mr. Price & Mr. Carter" and signed by "Hank Price" on "9-4-68". When these proposed contracts were first submitted, Price refused to sign any of them until he got clearance from Carter. Price then telephoned Carter, and plaintiff and Carter discussed the problems that had arisen subsequent to their previous meeting and discussion on August 30, 1968. The difficulties were apparently resolved and plaintiff testified that Carter instructed him to go ahead with the work. After the telephone conversation was concluded, plaintiff advised Price that he needed signatures on the three proposals. Price signed them in plaintiff's presence.

Plaintiff was never paid for his work (either for the signs or for the materials and services rendered in making repairs), and on January 30, 1969, filed suit naming Tally-Ho Motor Hotel, Inc., as sole defendant. He alleged that Price and Carter held themselves out as agents of Tally-Ho Motor Hotel, Inc. in certain negotiations, whereby plaintiff and Tally-Ho Motor Hotel, Inc. contracted for the construction of the signs; in addition plaintiff alleged that he furnished certain services and materials pursuant to defendant's order. The pleadings were amended by the filing of a second amended original petition on November 1, 1969, wherein plaintiff named Tally-Ho Motor Hotel, Inc., W K D & C, Inc., G J & W Investments, Inc., and Clyde K. Carter as defendants.

Defendants (save and except Tally-Ho Motor Hotel, Inc.), on November 7, 1969, filed their sworn first amended original answer (in answer to plaintiff's second amended petition), consisting of a general denial, special denials, and special exceptions, some of which were sustained and some of which were overruled.

W K D & C, filed a counterclaim against plaintiff on November 7, 1969, wherein it was alleged that at all times pertinent to the suit (a) it was the owner and lessor of the Tally-Ho East Motor Hotel; (b) Henry H. Price was the lessee thereof under the terms of a written lease dated August 31, 1968; (c) On September 3, 1968, Price and plaintiff entered into a contract for the construction of a new sign for the Hotel, which was approved by W K D & C, Inc., acting through its agent, Carter; (d) Price was to pay plaintiff for the sign; (e) Plaintiff breached the contract by reducing the height of the sign without

authorization of W K D & C, Inc.; and (f) the unauthorized acts by plaintiff caused W K D & C, Inc. to be damaged by the loss of revenue and by the cost of repairing the sign.

Defendants' first amended original answer and the aforesaid counterclaim constituted the pleadings upon which the answering defendants went to trial.

Plaintiff further amended his pleadings on February 15, 1970, when he filed his verified third amended petition, upon which he went to trial. He complained of the same defendants named in his second amended petition. His third amended petition, insofar as the points pertinent to this appeal are concerned, alleged that (a) during the negotiations in August and September, 1968, Price and Carter represented to plaintiff that Price was the agent of Carter and of the defendant corporations, and that Carter was either the owner of the hotels or an officer or agent of the corporations owning them; (b) as a result of such negotiations, plaintiff entered into the contracts made with Carter and signed by Price; (c) plaintiff performed the work required by the contracts; and (d) plaintiff was not paid for his work.

The case was set for trial for April 6, 1970, and on that date the answering defendants filed a motion that the case be continued until June 7, 1970; they stated as grounds therefor that Carter was an indispensable witness who could not be present for health reasons at the then-scheduled trial; attached to said motion was a sworn statement from Carter's doctor in Fort Worth, dated April 3, 1970, to the effect that it would be "detrimental to his health to go to court". No indication was given as to when Carter would be able to appear personally at a trial. Apparently, the case was re-set for trial for May 11, 1970, and on that date W K D & C, Inc. filed its motion for severance of its counterclaim. Virtually the same reasons were set out in this motion as were set out in the earlier motion for continuance; the same letter from the

same doctor bearing the same date was attached to this motion. It was overruled by the trial court and the case, including the counterclaim, proceeded to trial on May 11, 1970. Carter did not appear in person but portions of his deposition which was taken in Corpus Christi on May 6, 1970, were introduced in evidence.

W K D & C, Inc. contends that a separate trial should have been granted on its counterclaim in accordance with Rules 40, 41 and 174, Texas Rules of Civil Procedure. We do not agree. The counterclaim of W K D & C, Inc. against plaintiff should not have been severed from the main suit. Rule 97, T.R.C.P. Plaintiff sued for the contract price for both the temporary sign and the new sign constructed and installed for the Tally-Ho East. W K D & C, Inc. filed its counterclaim alleging damages as the sign was not installed in the manner alleged to have been agreed upon. The occurrence and transactions involved in the counterclaim are also involved in some of the transactions and occurrences in the main suit. The purpose in trying a counterclaim along with the main suit is to permit the respective claims of the parties arising out of the same transaction or occurrence to be adjudicated in one suit and thereby avoid a multiplicity of suits. 52 Tex.Jur.2d, Set-off, Counterclaim, Etc., §§ 7 & 8, pp. 189–192.

The motion for severance does not incorporate therein any of the reasons mentioned in Rules 40, 41 and 174, T.R.C.P. as to the granting of separate trials. It is apparent from the record that the real purpose in filing the motion for severance was to obtain a continuance. If a continuance was so desired, a motion for the same should have been filed. If cross-plaintiff did not want to try the counterclaim in the same suit along with the main case, then it should not have voluntarily filed it in the first instance. W K D & C, Inc. argues that it has been prejudiced as a result of the action by the trial court, but it does not demonstrate any such prejudice. Un-

der Rules 40, 41 and 174, T.R.C.P., the trial court is vested with great discretion in questions of joinder of parties and causes of action, and of consolidation or severances of causes of action; in the absence of an abuse of discretion which prejudices a complaining party, the action of the trial court will not be disturbed on appeal. Here the granting of the motion to sever would have delayed the trial, with probable resulting prejudice to plaintiff. While Carter did not appear in person at the trial, nevertheless, portions of his deposition were introduced that resulted in a full development of his testimony covering both the counterclaim as well as the main case. It is our opinion that there was no abuse of discretion in denying the motion to sever. Parker v. Potts, 342 S.W.2d 634 (Tex.Civ. App., Fort Worth 1961, wr. ref. n. r. e.); Sonnier v. Texas Employers Insurance Association, 417 S.W.2d 433 (Tex.Civ.App., Houston 1st, 1967, n. w. h.). Point of error 23 is overruled.

■ W K D & C, Inc., by points of error 24 and 25, protests the action of the trial court in granting an instructed verdict in plaintiff's favor on the counterclaim. The rule is well settled that in reviewing the action of the trial court in determining whether it was proper to instruct a verdict, the court must view the evidence in the light most favorable to the losing party. Every intendment reasonably deducible from the evidence must be indulged in favor of the losing party and against the verdict. Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W.2d 935 (1940); Fender v. Farr, 262 S.W.2d 539 (Tex.Civ. App., Texarkana 1953, n. w. h.). Therefore, we must indulge against the action of the trial court every inference that may be properly drawn from the evidence, and if the record reflects any testimony of probative force in favor of W K D & C, Inc., we must hold the trial court's action in this regard to be improper. White v. White, 141 Tex. 328, 172 S.W.2d 295 (1943); Texas Employers' Ins. Ass'n. v. Boecker, 53 S.W.2d 327 (Tex.Civ.App., Dallas 1932,

wr. ref.); Lerman v. Implement Dealers Mutual Insurance Co., 382 S.W.2d 285 (Tex.Civ.App., Houston 1964, wr. ref. n. r. e.); Powell v. Powell, 378 S.W.2d 943 (Tex.Civ.App., Beaumont 1964, n. w h.).

■ Applying the foregoing rules to the case at bar, we are of opinion that there are no pleadings that would support a judgment in favor of W K D & C, Inc. on the counterclaim, nor is there any evidence that plaintiff breached any contract or duty with or toward W K D & C, Inc., insofar as the counterclaim is concerned. Therefore, considering cross-plaintiff's pleadings, and viewing the evidence as we do, we are of opinion, and so hold, that the trial court properly instructed a verdict against cross-plaintiff, and correctly entered judgment that W K D & C, Inc. take nothing on its counterclaim against plaintiff. Points of error 24 and 25 are overruled.

■ Point of error 22 complains of the overruling by the trial court of the special exceptions set out in defendants' first amended original answer. These exceptions were levelled at plaintiff's second amended petition and not at plaintiff's third amended petition, his trial pleadings. No exceptions were filed by any defendant with respect to plaintiff's last pleading. Moreover, as defendants have not briefed this point, the same will not be considered by this Court, as we must assume that it has been waived. Rule 418(c), T.R.C.P.; Saldana v. Garcia, 155 Tex. 242, 285 S.W. 2d 197 (1956); Weatherred v. Kiker, 357 S.W.2d 182 (Tex.Civ.App., Amarillo 1962, wr. ref. n. r. e.) and the cases therein cited. Point of error 22 is overruled.

■ Points of error 5, 9 and 10 are to the effect that there are no pleadings, no special issues submitted, and no jury findings that will support a personal judgment against Carter. It is contended that plaintiff judicially admitted that Carter was acting as the agent for a disclosed principal when, in his original petition, he alleged "That during August and September of

1968 plaintiff entered into negotiations with one Mr. Henry Price and Mr. Clyde K. Carter who represented themselves and held themselves out to plaintiff as representatives and agents of Tally-Ho Motor Hotel, Inc." We do not agree. The original petition was amended and was superseded by plaintiff's subsequent amended pleadings. It is well settled that if a pleading has been abandoned, amended or superseded, it is no longer a judicial pleading and allegations contained therein are no longer conclusively binding on the pleader. Kirk v. Head, 137 Tex. 44, 152 S.W.2d 726 (1941) ; McCormick v. Stowe Lumber Company, 356 S.W.2d 450 (Tex.Civ.App., Austin 1962, wr. ref. n. r. e.). There is no allegation in plaintiff's third amended petition that Carter was the agent of "Tally-Ho Motor Hotel, Inc." or of any other corporation by name; the allegation is that Carter was either the owner of the hotels or the agent of the corporation that did own them. Carter's position cannot be sustained.

■ Carter further argues that the allegation in plaintiff's third amended petition, reading as follows:

"Both Mr. Carter and Mr. Price conducted themselves in their dealings with Mr. Walton in such a way as to lead a reasonable man to believe that Mr. Price was the duly authorized agent of Mr. Carter and of the defendant corporations, and that Mr. Price apparently had authority to enter into said contracts in behalf of Mr. Carter and the defendant corporations";

is also a judicial admission that will preclude a personal judgment against Carter. We believe otherwise. Nothing contained in the quoted portion of plaintiff's trial pleading will defeat a recovery against Carter. Again, we point out that plaintiff sued Carter as a defendant along with the other named defendants, two of which happened to be owners of the hotels. Before it is held that the allegations in a trial pleading constitute judicial admissions, it must appear that such allegations are deliberate,

clear and unequivocal. Dallas Transit Company v. Young, 370 S.W.2d 6 (Tex.Civ. App., Dallas 1963, wr. ref. n. r. e.) ; Restelle v. Williford, 364 S.W.2d 444 (Tex.Civ.App., Beaumont 1963, wr. ref. n. r. e.). The pleadings in question do not, in our opinion, constitute the judicial admission claimed for them by defendants.

■ Defendants did not contend in the trial court that these pleadings were judicial admissions as to dispense with the necessity of evidence on the point. On the contrary, they treated the matter as a disputed issue by introducing evidence thereon. The question was raised for the first time in defendants' motion for judgment non obstante veredicto. The question of judicial admission, if any, was thereby waived. Dallas Transit Co. v. Young, supra; Restelle v. Williford, supra; Starks v. City of Houston, 448 S.W.2d 698 (Tex.Civ. App., Houston 1st 1969, wr. ref. n. r. e.).

The jury found, in response to special issues submitted to them, that (a) the contracts were executed by Price on behalf of the respective corporations owning the hotels and by their express authority as conferred upon him by Carter; (b) the labor and materials were requested by Price for and on behalf of such corporations and by their express authority as conferred upon him by Carter; (c) Carter did not disclose to plaintiff that he was acting in the capacity of a representative of either W K D & C, Inc. or of G J & W Investments, Inc.; (d) Carter conducted himself in such a manner in his dealings with plaintiff as would lead an ordinary businessman, when viewed from the position of plaintiff, to believe that Price possessed sufficient authority from Carter to execute the contracts and to order the labor and materials; (e) plaintiff believed that Price had sufficient authority to execute the contracts and to order the materials and labor, and that he relied on such belief to his detriment; (f) the corporations owning the hotels received and knowingly retained the benefits of the contracts performed by plaintiff and of the labor and materials furnished by him; (g)

W K D & C, Inc. would be unjustly enriched if permitted to retain the costs of labor and materials as described in plaintiff's exhibits 7 and 8; and (h) plaintiff did not intend to look to Price individually for payment of the signs or for labor and materials furnished.

■■■■■ In answer to these particular complaints, we hold that plaintiff's pleadings are sufficient to support a personal judgment against Carter; proper special issues were submitted, and the jury answered them in such a way that supports such judgment. Points of error 5, 9 and 10 are overruled.

■■■■■ Carter, by points 6 and 7, says that there is no evidence to support a personal judgment against him; by point 8, he contends that the evidence is factually insufficient to support such a judgment. The question of "no evidence" is one of law and our judicial review of such question imposes upon us a duty to consider only the evidence and the inferences favorable to the jury findings and to disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.1965). This court is without authority to disregard the jury's answers to special issues where there is some evidence in the record to support such answers. Singer v. Singer, 150 Tex. 115, 237 S.W.2d 600 (1951). It is well established that any ultimate issue may be established by circumstantial as well as by direct evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958). In considering the points on factual insufficiency of the evidence, we must review all the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

It is undisputed that Price signed the contracts. Carter did not sign the contracts. As already stated, plaintiff testified (a) in August 1968, Price told him that one of the owners of the Viking Motor Hotel would come to Corpus to discuss the matter of the new sign, (b) on August 21, 1968, Price told him that Carter was one of the owners of the Viking, and (c) on August 30,

1968, Price, Carter and plaintiff met face to face and engaged in the discourse and negotiations already fully discussed. Plaintiff did not know of the leases covering the motels; moreover, the lease between W K D & C, Inc., as lessor, and Henry Price, as lessee, covering the Viking was not made until August 31, 1968, so it was impossible for plaintiff to have been charged on August 30, 1968 with notice of any contractual provisions in a lease that was not made until the next day.

Carter also says that his acts are capable of explanation on some ground other than the alleged agency of Price for him, and, consequently, plaintiff cannot rely on any such agency. He cites Tarver, Steele & Company v. Pendleton Gin Company, 25 S. W.2d 156 (Tex.Civ.App., Eastland, 1930, n. w. h.) as authority. That case is not in point. He argues that under each written lease by the owning corporation, as lessor, to Price, as lessee, covering the motel, that Price was required to obtain the prior consent of the lessor before making any alterations or improvements, such as new signs; he maintains that when Price did receive such permission that he became an independent contractor and that the contracts were strictly between plaintiff and Price; he then speculates that he might conceivably have been acting as an advisor to Price, as an officer for the lessor, or for himself as an investor, the result of which would have placed Carter within the rule announced in the Tarver case. We reject this argument. Plaintiff did not know of the relationship of lessee and lessor between Price and either W K D & C, Inc. or G J & W Investments, Inc., at any time pertinent to this lawsuit; furthermore, plaintiff is not charged with notice of any contractual relationship between Price and these defendants.

■■■■■ Carter vigorously argues that he could not be held liable because the principal was identified on the contracts as "Tally-Ho Motor Hotel". This argument, in our opinion fixes liability on him and makes

him amenable to the general rule as stated in 3 Am.Jur.2d, Agency, § 295, p. 655, as follows:

"As a general rule, one who contracts as an agent in the name of a nonexistent or fictitious principal, or a principal without legal status or existence, renders himself personally liable on the contracts so made. * * *"

The above rule was quoted in Express Publishing Company v. Levenson, 292 S.W.2d 357 (Tex.Civ.App., San Antonio, 1956, wr. dism'd). Such designation applied to the name of the hotel only, and "Tally-Ho Motor Hotel", the addressee, had no legal status or existence. Here, the business dealings were between Carter and plaintiff, and no one else. Plaintiff's addressing the proposal in the manner done is explained by the fact that he had, for many years, addressed all correspondence, invoices and written communications to the owners of the hotel in exactly the same way. Neither Price nor Carter advised plaintiff that the proposed contract had been submitted to the wrong person; the contracts were accepted by Carter, even though signed by Price. The instruments signed by Price on September 4, 1968, simply reduced to writing the terms of the agreements that had been orally agreed to by plaintiff and Carter. The record reveals that in August and September, 1968, plaintiff knew that Marston, the former owner of the hotel, had sold it. He had been informed that Clyde K. Carter was one of the new owners. The fact that the contracts were directed to the "Tally-Ho Motor Hotel", under the circumstances, amounted to no more than the selection of an addressee, with the tacit understanding that the proposal would be submitted to the real owners, whoever they were. This was done. Price called Carter. The quoted expression did not amount to a disclosure of the name of any principal represented by Carter, nor did the same identify it as a matter of law with a principal represented by Carter. See 150 A.L.R. 1303.

In this state, as in most others, an agent who enters into a contract with another without disclosing the identity of his principal is held personally liable under it. Furthermore, an agent does not escape liability by purporting to act for a nonexistent principal. On the other hand, where the principal is disclosed, the agent does not ordinarily incur personal liability.

In Boyles v. McClure, 243 S.W. 1080 (Com.App., 1922), it is stated, at pages 1081–1082:

"* * * the rule is well settled in this state that an agent makes himself liable if he contracts in his own name without disclosing the name of his principal, although the person contracting with him knew at the time that he was acting as agent only."

The court, in Mahoney v. Pitman, 43 S.W.2d 143 (Tex.Civ.App., Amarillo 1931, wr. ref.) states the rule, as follows:

"It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of the principal, to disclose not only the fact that he is acting in a representative capacity but also the identity of his principal, as the person dealt with is not bound to inquire whether or not the agent is acting as such for another."

The rules announced in the foregoing cases have been followed in many subsequent cases, including Vincent Murphy Chevrolet Co. v. Auto Auction Co., 413 S.W.2d 474 (Tex.Civ.App., Eastland 1967, wr. ref. n. r. e.); Anderson v. Smith, 398 S.W.2d 635 (Tex.Civ.App., Dallas 1966, n. w. h.); Lachmann v. Houston Chronicle Publishing Company, 375 S.W.2d 783 (Tex.Civ.App., Austin 1964, wr. ref. n. r. e.). See also 3 Am.Jur.2d, Agency, § 317, p. 674; Restatement of the Law 2d, Agency, § 321 pp. 70–72.

It is equally well established that even though an agent may disclose the fact

of agency when entering into a contract with a third party, if he conceals the name and identity of his principal and deals in his own name only, he is personally liable on the contract. Union Bus Lines v. Young, 194 S.W.2d 779 (Tex.Civ.App., Waco 1946, n. w. h.); 2 Tex.Jur.2d, Agency, § 211, p. 665–666.

■ In the case at bar, Carter admits that he was the agent of W K D & C, Inc. and of G J & W Investments, Inc. The record does not reveal that Carter (a) advised plaintiff that he was acting as an agent for said corporations, or (b) that he advised plaintiff of the identity of his principals. The fact that plaintiff learned of the agency relationship and of the identity of the principals after the contracts were made and the work performed and the services rendered does not exonerate Carter from liability. Dodson v. Peck, 75 S.W.2d 461 (Tex.Civ.App., Amarillo 1934, wr. dism'd; Eppenauer v. Davis, 272 S.W.2d 934 (Tex.Civ.App., El Paso 1954, wr. ref. n. r. e.); 3 C.J.S. Agency § 215a, pp. 123–125.

It is recognized in this state that circumstances may exist which would put the person with whom the agent is dealing on notice of inquiry of the existence of a principal. Defendant cites Johnson v. Armstrong, 83 Tex. 325, 18 S.W. 594 (1892), and Veazie v. Beach Plumbing and Heating Co., 235 S.W. 695 (Tex.Civ.App., Fort Worth 1921, n. w. h.) as authority that plaintiff was put on such notice. No such circumstances exist in the instant case.

■ There is ample evidence in the record that Price acted as the agent of Carter in signing the contracts, and that Carter did not disclose the identity of his principals during his business dealings with plaintiff. Defendant's "no evidence" and "factual insufficiency" points are without merit, and, therefore, his points of error 6, 7 and 8 are overruled.

■ Points of error 1, 2, 3, 4, 11, 12, 15 and 21 constitute objections to the court's charge. The record does not contain any instrument setting out any such objections as a separate or integral part thereof, but an exhibit is attached to defendants' motion for new trial, denominated "Defendants' Objections and Exceptions to the Charge of Court". These objections were dictated by defendants' counsel to the court reporter before submission of the case to the jury, with the consent of opposing counsel and the trial judge. However, the record does not show that any such transcribed objections were presented to the trial court, prior to the filing of the transcript herein, nor does it reveal any official signature thereon by the trial judge overruling the objections. After submission of this case, defendant filed a motion with the trial judge requesting the entry of a nunc pro tunc order that would reflect that such objections were presented to the trial court and were overruled, and that would bear the official signature of the trial court. The trial court refused to sign or enter such requested nunc pro tunc order. We do not pass on whether the trial court could have entered such an order or not; that question is not before us. In this state of the record, defendants' objections to the court's charge can not and may not be considered by this Court. Rule 272, T.R.C.P., in part, states:

" * * * The requirement that the objections to the court's charge shall be in writing will be sufficiently complied with if such objections are dictated to the court reporter in the presence of and with the consent of the court and opposing counsel, before the reading of the court's charge to the jury, and are subsequently transcribed and the court's ruling and *official signature endorsed thereon and filed with the clerk in time to be included in the transcript.* * * * " (Emphasis supplied).

The transcribed objections to the court's charge without the endorsement of the trial

court's ruling thereon and without the official signature of the trial judge is not a sufficient compliance with the rule. Under these circumstances, we shall consider the charge of the court as though no objections were filed. Kettle v. Smircich, 415 S.W.2d 935 (Tex.Civ.App., Corpus Christi, 1967, n. w. h.); Big Three Welding Equipment Company v. Roberts, 399 S.W.2d 912, 918 (Tex.Civ.App., Corpus Christi, 1966, wr. ref. n. r. e.); Grabes v. Reinhard Bohle Machine Tools, Inc., 381 S.W.2d 395, 397 (Tex.Civ.App., Corpus Christi, 1964, wr. ref. n. r. e.); Beacon National Insurance Company v. Young, 448 S.W.2d 812 (Tex. Civ.App., Dallas 1969, wr. ref. n. r. e.); State v. Turboff, 431 S.W.2d 953 (Tex.Civ. App., Houston 1st, 1968, n. w. h.); Charter Oak Fire Insurance Company v. Perez, 446 S.W.2d 580, 582 (Tex.Civ.App., Houston 1st, 1969, wr. ref. n. r. e.); Texas General Indemnity Company v. McNeill, 261 S.W.2d 378 (Tex.Civ.App., Beaumont, 1953, n. w. h.). We feel that we are required by the explicit and unambiguous provision of the rule and by the above authorities to hold, as we do, that such objections were not preserved for appellate review. Accordingly, points of error 1, 2, 3, 4, 11, 12, 15 and 21 are overruled.

We have considered points of error 13 and 16, and hold under the record before us that neither the requested issue as to the intent or motivation of Carter in approving the design for the sign, nor the requested definitions of the terms "apparent authority" and "express authority" should have been given. These points, therefore, are overruled.

Point of error 14 asserts that "the trial court erred in admitting into evidence plaintiff's exhibit 1, an alleged inter-office memorandum by plaintiff about ownership of the Tally-Ho Motor Hotel". Plaintiff testified, over defendants' objection, as follows:

"After Mr. Marston called me in March of 1968 and cancelled the maintenance contract, I made an inter-office memorandum dated March 22, 1968.

"I made the memorandum to inform our bookkeeper that Marston had sold the Talley-Ho Motor Hotel to Clyde Carter of Fort Worth."

The memorandum was prepared by plaintiff and was introduced in evidence over defendants' objection that it was hearsay, immaterial and irrelevant. The memorandum is dated 3–22–68, and states:

"Harold Marston, owner of Tally-Ho has sold Motel to a Clyde Carter of Ft. Worth. He wants Maint. contract terminated the end of this month.

Signature  Bud."

Therefore, the same evidence was placed before the jury in two ways: (a) by the testimony of plaintiff, and (b) by the introduction of the memorandum itself. Defendants objected both to the testimony and to the introduction of the memorandum on the grounds stated. However, no error is assigned because of the trial court's overruling of defendants' objection to the testimony; the error covered by the point is limited to the introduction in evidence of the memorandum itself. Under the facts and circumstances presented by the record, plaintiff was justified in believing that Marston had sold the hotel to Carter, irrespective of whether it was true or not, and the introduction into evidence of the memorandum itself was, at most, cumulative of plaintiff's testimony. If the admission of such memorandum into evidence was error, then it was harmless error within the meaning of Rule 434, T.R.C.P. In our opinion, the action by the trial court in admitting the memorandum into evidence did not amount to such a denial of the rights of defendants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. See Appellate Procedure in Texas, § 17.6. Point of error 14 is overruled.

Defendants' remaining points of error 17, 18, 19, and 20 deal with attorney's fees, one way or another. Plaintiff's

**474**

trial pleadings prayed for attorney's fees in the amount of $2,500.00; by trial amendment, the court, over defendants' objection, permitted plaintiff to amend so as to pray for $4,500.00 attorney's fees. Defendants moved for a continuance based on surprise, which was denied by the trial court. Plaintiff's attorney testified that he devoted 137.75 hours plus another full day in trial on the case, and that another attorney, associated with plaintiff's attorney in the case, working under the personal supervision of plaintiff's attorney, spent 54 hours on the case. A disinterested attorney, of Corpus Christi, Texas, testified that a reasonable attorney's fee under the circumstances would be approximately $6,010.00. The jury awarded $3,875.00 in this instance. Defendant strenuously stresses complete surprise and argues that the trial court, having granted the trial amendment, should have granted him a continuance in order that he would have had additional time to prepare his defense; he says that it was an abuse of discretion not to do so. We do not agree. The trial amendment did not change the nature of the lawsuit, did not call for additional defenses on the part of defendant, and did not inject any new matter into the case. The points of error are overruled.

All told, this case was submitted to the jury on 37 special issues, all of which were answered favorably to plaintiff. Carter admits and the record shows that he was an officer and an agent of both W K D & C, Inc. and G J & W Investments, Inc. We have examined the record and have considered all of the points raised in this appeal. Reversible error is not shown. The pleadings, evidence and jury findings support the judgment. We are satisfied that Carter failed in his duty to disclose to plaintiff his true principals for whom he was acting and that under the record before us he could not escape personal liability to plaintiff on the contracts performed by plaintiff and on the account.

The judgment of the trial court is affirmed.