**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

m 00-11231

INTERNATIONAL TURBINE SERVICES, INC,

Plaintiff-Appellee,

VERSUS

VASP BRAZILIAN AIRLINES; ET AL,

Defendants,

VIACAO AEREA SAO PAULA SA - VASP
doing business as VASP Brazilian Airlines

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

January 4, 2002

Before BALDOCK,* SMITH, and EMILIO M. GARZA, Circuit Judges.

BOBBY R. BALDOCK, Circuit Judge:

---

* Circuit Judge of the Tenth Circuit, sitting by designation.

Defendant VASP Brazilian Airlines ("VASP"), a foreign corporation, appeals the district court's grant of summary judgment and award of damages on Plaintiff International Turbine Services, Inc.'s ("ITS") breach of contract claim. ITS is a Texas Corporation. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

I.

On October 1, 1997, ITS and VASP entered into an Aircraft Engine Lease Agreement ("Lease"). ITS leased to VASP an aircraft turbine engine and engine stand. The original Lease was for a two-month term. Through a series of amendments and renewals, the parties extended the initial term through August 18, 1998. Upon termination, the Lease required VASP to return the engine in operable condition to ITS' facility in Dallas, Texas.

The Lease required ITS to deliver the engine with a Federal Aviation Administration (FAA) "approved return to service tag affixed to it." Aside from the service tag, VASP leased the engine in "AS IS WHERE IS, condition and with all faults" (emphasis in original). The Lease required VASP to service, maintain and repair the engine at its own cost and expense. The Lease further provided that VASP bore "the risk of loss and damage to the Engine and all component parts from any and every cause whatsoever" with one exception: ITS retained responsibility for shop visits required to overhaul and repair "time controlled" and "on-condition" parts which were not damaged by the act or

2

omission of VASP.[1]  Under the terms of the Lease, VASP was responsible for conducting maintenance inspections to identify when such shop visits were required, and for scheduling the required overhaul or repair.  The Lease contained a valid choice of law provision specifying Texas law.

On June 15, 1998, the pilot of a VASP plane on which the engine was mounted aborted take-off due to strong vibrations in the engine.  VASP personnel inspected the engine and discovered it was damaged.  Specifically, a high-pressure turbine ("HPT") blade failed causing severe damage to the engine.  The HPT blade is an on-condition part.  VASP sent the engine to an Air France repair facility in France for inspection.  This inspection confirmed the engine damage was due to the failure of an HPT blade, and that the extent of the damage rendered the engine unusable.  After receiving this confirmation, VASP informed ITS it disputed responsibility for the repair costs and would no longer submit payments under the Lease.  VASP also instructed ITS to retrieve the engine from the French repair facility.  ITS refused and filed this action in state court seeking damages for breach of contract.  VASP counterclaimed asserting failure of consideration.  VASP removed the case to federal court based on diversity jurisdiction.  See 28 U.S.C. § 1332.

---

[1] A "time controlled" part is one that must be replaced or repaired after a specified number of hours or cycles.  An "on-condition" part is one that must be replaced or repaired whenever, upon inspection, it no longer complies with relevant specifications.

Before the district court, ITS argued that the Lease unambiguously required VASP to (1) repair any and all damage to the engine; (2) make monthly lease payments while the engine remained in VASP's possession; and (3) return the engine to ITS in operable condition upon termination of the Lease. VASP acknowledged it did not repair or return the engine and did not make lease payments after September 1998. The district court agreed the Lease was unambiguous and concluded VASP received the bargained for consideration. Accordingly, the court granted ITS' motion for summary judgment on its breach of contract claim, dismissed VASP's counterclaim, and awarded ITS damages and prejudgment interest. Specifically, the district court awarded damages in the amount of $2.4 million, the cost to repair the engine, and $1.425 million, the total past-due lease payments. The court awarded prejudgment interest on the entire damage award at a rate of ten percent per annum.

On appeal, VASP asserts the district court improperly granted summary judgment because (1) the Lease did not unambiguously assign responsibility for engine damage caused by the failure of an on-condition part;[2] and (2) a genuine

_____

[2] This argument is properly before us. ITS' assertion that VASP waived this argument is without merit. ITS directly raised the ambiguity issue in its motion for summary judgment. This alone may be sufficient to preserve the issue for appeal by either party. See Union Mutual Life Ins. Co. v. Chrysler, 793 F.2d 1, 17 (1st Cir. 1986)(issue preserved for appeal if raised before the trial court by either party). In addition, VASP alleged contract ambiguity by offering a competing interpretation of the lease terms. The district court expressly
(continued...)

4

issue of material fact exists as to whether VASP received the bargained-for consideration.  In addition, VASP asserts the district court erred in calculating prejudgment interest.

II.

We review a grant of summary judgment de novo, applying the same standard as the district court.  Roberts v. Cardinal Services, 266 F.3d 368, 373 (5th Cir. 2001).  A motion for summary judgment is properly granted only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Id.

A.

In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless.  Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  Where the contract language is clear and definite, the contract is not ambiguous and the court must apply the plain language as a matter of law.  DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999).  A contract term is not ambiguous merely because the parties to an agreement proffer conflicting

---

[2](...continued)
addressed the ambiguity argument in its ruling.  An argument is not waived where the issue was raised and the trial court had a sufficient opportunity to rule on it.  Save Power Ltd. v. Syntek Finance Corp., 121 F.3d 947, 950 n.4 (5th Cir. 1997).

5

interpretations of a term.  Id.  An ambiguity arises only where the agreement is

reasonably susceptible to more than one interpretation.  Id.

The Lease provides, in relevant part:

> During the Lease Term, <u>Lessee will at its cost and expense, repair and maintain the Engine</u> in accordance with Operator's FAA approved Part 121 Maintenance Program or equivalent (which Lessee represents Operator has) so as to keep the Engine in as good operating condition as when delivered to Lessee, reasonable wear and tear excepted. . . . . Lessee shall assume and bear risk of loss and damage to the Engine and all component parts <u>from any and every cause whatsoever, except that Lessor will be responsible for any required shop visit to cover the overhaul and repair of time-controlled components, parts and on-condition components or parts</u>, which were not damaged by reason of the act or omission of Lessee (emphasis added).

The parties agree that an HPT blade is an "on-condition" part and that the failure

of an HPT blade caused the engine damage.  VASP asserts that under the terms of

the Lease, ITS bears responsibility for any damage caused by the failure of a

time-controlled or on-condition part.[3]

Pursuant to the plain language of the Lease, VASP was obligated to repair

and maintain the engine and also bore the risk of loss and damage "from any and

---

[3]  VASP does not assert that ITS breached its responsibility to overhaul and repair the specified parts.  The Lease required VASP to maintain the engine in accordance with an FAA approved maintenance program.  The maintenance program required VASP to perform regular inspections and evaluations of the HPT blade.  VASP performed the required inspections, but did not schedule a shop visit to repair or overhaul the HPT blade.

every cause whatsoever." The only exception to this provision is that ITS was responsible for any shop visit required to overhaul and repair time-controlled and on-condition parts. The Lease provision clearly sets forth a general rule that VASP will bear the risk of loss or damage and will service and maintain the Engine at its expense. The Lease then establishes a narrow exception to this general rule for scheduled maintenance of time-controlled and on-condition parts. Damage to engine parts other than time-controlled or on-condition parts does not fall within this narrow exception. Accordingly, under the plain language of the contract, VASP is responsible for repairing damage to the engine.[4]

In addition, VASP's proffered interpretation is not reasonable. The argument that ITS is responsible for any damage caused by failure of an on-condition part is contrary to, and renders meaningless, the provision that expressly assigns to VASP the risk of loss and damage from "any and every cause whatsoever." This interpretation also can not be reconciled with provisions that expressly assign to VASP responsibility for the repair and maintenance of the engine, and require VASP to return the engine to ITS in operable condition upon

---

[4] VASP also argues that "required shop visit" can reasonably be read to include "shop visits" required to repair damage to the rest of the engine caused by the failure of a time-controlled or on-condition part. This is not a reasonable interpretation of the term. The Lease defines what repairs are covered by the shop visits: ITS is responsible for "any required shop visit to cover the overhaul and repair of time-controlled components, parts and on-condition components or parts."

7

termination of the Lease. When read as a whole, the Lease terms are clear and definite and can not reasonably be reconciled with the alternative interpretations VASP advances. Thus, the district court properly concluded the Lease is unambiguous.

B.

VASP also asserts a genuine issue of material fact exists as to whether VASP received the bargained-for consideration. Under Texas law, the lack of consideration defense does not raise a genuine issue of material fact where the agreement validly excludes all warranties. See Southwest Park Outpatient Surgery, LTD. v. Chandler Leasing Div., 572 S.W.2d 53, 54-55 (Tex. App. 1978). The Texas Business and Commercial Code expressly authorizes the exclusion of warranties in lease agreements where the requisite language is present. See Tex. Bus. & Comm. Code Ann. § 2A.214. The Code also provides that all implied warranties are excluded by the language "as is" or "with all faults." Id. § 2A.214(c)(1).

The Lease provides:

> On the Delivery Date, Lessor will ensure that each Engine will have a Federal Aviation Administration ("FAA") approved return to service tag affixed to it. . . . [Aside from the FAA tag], the Equipment is leased and accepted by Lessee in "AS IS, WHERE IS" condition and with all faults. Lessor makes no warranties whatsoever with respect to any Equipment, express or implied, except [the warranty of title] (emphasis in original).

8

The Lease also expressly excludes any implied warranties of merchantability or fitness for a particular purpose. The language of these provisions tracks the language authorized by the Code. See id. §§ 1.201(10), 2A.214(a)-(c). The Lease validly excludes all warranties with the exception of title and requires only delivery of an engine with an FAA approved return to service tag.

VASP acknowledges the engine arrived with the appropriate FAA tag. According to VASP, however, the FAA tag constitutes an implied representation that all applicable maintenance regulations and manufacturers' recommendations have been followed, including the manufacturer's recommendations regarding HPT blades. Yet, this is precisely the type of implied representation or warranty the Lease expressly excludes. Under the express terms of the Lease, VASP waived the right to complain about the condition of the engine upon receipt.

VASP's failure of consideration claim also wants for lack of any competent summary judgment proof. VASP representatives signed an Equipment Delivery Receipt acknowledging the engine's compliance with the terms and conditions of the Lease. VASP also was sufficiently satisfied with the engine's performance to execute a series of extensions and amendments to the original two-month lease term. Thus, the district court did not err in dismissing VASP's lack of consideration claim.[5]

---

[5] VASP also asserts that the district court erred by striking as hearsay

(continued...)

## II.

Finally, VASP asserts the district court erred in calculating prejudgment interest by (1) applying an improper interest rate; and (2) applying the rate over an improper time period and on an improper principle sum. The district court concluded VASP breached the lease by failing to comply with provisions of the Lease which required VASP to return the engine in operable condition at the end of the lease term, and to continue making lease payments until the engine was returned. We review the district court's award of prejudgment interest for an abuse of discretion. Harken Exploration Co. v. Sphere Drake Ins. PLC, 261 F.3d 466, 478 (5th Cir. 2001).

## A.

Prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 528 (Tex. 1998). The

---

[5](...continued)
portions of an affidavit regarding the age and number of cycles on the failed engine blade. We review a district court's evidentiary rulings for abuse of discretion. United States v. Cantu, 167 F.3d 198, 203 (5th Cir. 1999). The district court did not abuse its discretion in excluding the proffered testimony. Even if VASP could show the district court abused its discretion, the error is harmless. The statement lent support to VASP's failure of consideration claim. As discussed above, however, this claim fails due to the express exclusion of all warranties.

Texas Supreme Court has recognized two separate bases for the award of prejudgment interest: (1) an enabling statute; and (2) general principles of equity. Id. In Texas, statutory prejudgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases. Tex. Fin. Code §§ 304.102, 304.201; Kenneco, 962 S.W.2d at 530. Because ITS' breach of contract claim does not fall within the statutory provisions, the prejudgment interest award is governed by Texas common law. Kenneco, 962 S.W.2d at 530; Adams v. H & H Meat Products, Inc., 41 S.W.3d 762, 780 (Tex App. 2001). Texas common law allows prejudgment interest to accrue at the same rate as postjudgment interest on damages awarded for breach of contract. Kenneco, 962 S.W.2d at 532. The current rate of postjudgment interest is ten percent per annum, simple interest. Tex. Fin. Code § 304.003.

VASP, citing Texas Finance Code § 302.002, argues that Texas statutory law limits prejudgment interest to six percent. Prior to amendment, § 302.002 provided: "When no specified rate of interest is provided by the parties, interest at a rate of six percent per year is allowed on all accounts and contracts ascertaining the amount payable." Tex. Fin. Code § 302.002 (1998)(repealed). Effective September 1, 1999, however, the Texas legislature repealed this provision. The statute as currently drafted expressly excludes

prejudgment interest awards.[6]  See Lee v. Lee, 47 S.W.3d 767, 800 (Tex. App. 2001).  The district court properly calculated prejudgment interest at ten percent per annum.

B.

VASP also asserts the district court erred in awarding prejudgment interest on damages that accrued after the date ITS filed suit, and in assessing prejudgment interest on both components of the damage award.  Under Texas common law, prejudgment interest accrues on the total amount of the judgment, including future damages.  Kenneco, 962 S.W.2d at 530-31; C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 326 (Tex. 1994)(prejudgment interest is intended to give the parties an incentive to settle as well as to compensate the injured party for the loss of funds, thus prejudgment interest on future damages is proper).

The Lease requires VASP to continue monthly lease payments until the engine is returned in operable condition to ITS's Texas facility.  In the event the engine is damaged, the Lease also permits ITS to recover repair costs required to return the engine to operable condition.  Finally, the Lease specifies that all

---

[6] The current version of the statute reads: "If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year."  The definition of "legal interest" expressly excludes "judgment interest" which is separately defined under the Code as any "interest on a money judgment."  Tex. Fin. Code § 301.002.

12

remedies are cumulative. At the time the district court entered its verdict, the damaged engine was still in France and had not been repaired. Under the express terms of the Lease, ITS is entitled to recover both repair costs and accrued monthly lease payments. Under Texas common law, ITS also is entitled to prejudgment interest on the entire damage award.

Accordingly, the judgment of the district court is AFFIRMED.