**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-50328

GENERAL ACCIDENT INSURANCE COMPANY

Plaintiff,

v.

UNITY/WATERFORD-FAIR OAKS, LTD.

Defendant - Cross Claimant - Appellant,

v.

GENERAL STAR INDEMNITY COMPANY

Cross Defendant - Appellee.

Appeal from the United States District Court
For the Western District of Texas, San Antonio Division

April 10, 2002

Before GARWOOD, DeMOSS, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The plaintiff, owner of apartment buildings, sued the defendant, its insurer, under a commercial property insurance policy to recover for damage to the foundations of buildings resulting from seepage or leakage from underground pipes and drains and for the cost of accessing and

1

repairing that underground plumbing. The district court's summary judgment held that the policy does not cover the losses. We affirm. First, the policy excludes coverage of "loss or damage caused by or resulting from . . . [c]ontinuous or repeated seepage or leakage of water that occurs over a period of 14 days or more." The damage to the apartment building foundations indisputably resulted from soil expansion caused by continuous or repeated seepage or leakage fitting that description. Second, the policy also explicitly provides that "[c]overed property does not include . . . [u]nderground pipes, flues or drains." The seepage or leakage indisputably came from underground pipes and drains beneath the apartment foundations. Thus, because the underground plumbing was not insured: (a) the policy's *exclusion from coverage* of loss or damage "caused by or resulting from . . . [r]ust, corrosion . . . . deterioration . . . . in property that causes it to damage or destroy itself" is irrelevant and does not apply; and (b) the exception to or "repeal" of that exclusion for "specified causes of loss" defined by the policy is also irrelevant and inapplicable. Third, "[i]f loss or damage caused by or resulting from covered water . . . damage loss occurs," the policy provides for an additional coverage extension to "pay the cost to tear out and replace any part of the building . . . to repair damage to the system or appliance from which the water . . . escapes." But because there was no loss or damage caused by or resulting from *covered* water damage and because the underground pipes were not covered property, the insurer is not obliged to pay the cost to tear out and replace any part of the building or structure to repair damage to the underground pipes.

I.

Unity/Waterford-Fair Oaks, Ltd. (Unity) bought an existing apartment complex in San Antonio, Texas in September 1995 and named it Meadowcrest Apartments. Built in 1970, the 178 units were located in 16 buildings. At the time of Unity's purchase, the property was in poor overall

condition. An inspection conducted on September 25, 1995, however, did not reveal any significant foundation problems in the buildings.

General Star Indemnity Company issued a commercial property insurance policy to Unity that covered Meadowcrest effective on December 1, 1995. During the following year, Unity discovered foundation damage to the apartments and submitted claims to General Star and its other insurers, General Accident Insurance Company and Fireman's Fund Insurance Company of Ohio. The insurers jointly investigated the cause of the damage. The investigation revealed that underground cast-iron sewer and water pipes had massive leaks resulting in the expansion of soil beneath 11 of the 16 buildings. According to consultants hired by the insurers, the pipe deterioration was likely caused by acids in the soil that corroded the pipes. Because the soil beneath the foundations of the apartment buildings was an active, highly expansive clay, it absorbed the water and expanded. The soil expansion then caused the building foundations to move and create as much as a seven-inch difference in elevation. The foundation movement in turn created roof and framing damage as well as exterior cosmetic damage. According to undisputed expert testimony, the underground pipes leaked continuously for at least one month, and more likely six months, before damage occurred.

General Accident Insurance Company, which had insured the property prior to Unity's purchase, filed a petition for declaratory relief in federal district court pursuant to 28 U.S.C. § 2201 and invoked the court's diversity jurisdiction.[1] Unity answered and filed cross-claims against its insurers, including General Star, which also intervened. Unity made claims against General Star to recover the damage to the foundations and buildings and to pay for the cost of accessing the

---

[1]General Accident had insured Unity's Meadowcrest Apartments for October and November of 1995 only.

3

underground pipes and drains for purposes of repairs and replacements.

General Star moved for summary judgment declaring there to be no coverage, which the district court granted on December 14, 2000. The district court found no ambiguity in the insurance policy and dismissed all of Unity's claims against General Star. The district court held that the General Star policy excluded damage resulting from rust or corrosion, except when damage by water resulted. In all cases where damage by water occurred due to seepage or leakage over a period of 14 days or more, however, damage was not covered - even if that leakage or seepage was caused by rust or corrosion. The court also found that the policy did not cover underground plumbing access costs. Unity appeals.

## II.

"We review the district court's interpretation of contracts and conclusions of law de novo and under the same standards that guided the district court."[2] Summary judgment is proper when the pleadings, depositions, admissions, and the answer to interrogatories together with affidavits, demonstrate that no genuine issue exists as to any material fact and that the movant is entitled to judgment or partial judgment as a matter of law.[3]

Because federal jurisdiction was based on the parties' diversity of citizenship, we apply Texas law to the facts of this case.[4] In determining if coverage exists under the policy, we are guided by several basic rules of contract construction as outlined by the Texas Supreme Court:

First, insurance contracts are subject to the same rules of construction as other contracts. Our primary goal, therefore, is to give effect to the written expression of the parties' intent. We

---

[2] *Musser Davis Land Co. v. Union Pac. Res.,* 201 F.3d 561, 563 (5th Cir. 2000).

[3] Fed. R. Civ. P. 56(c); *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 517-18 (5th Cir. 1998).

[4] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938).

must read all parts of the contract together, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative . . . . If, after applying these rules, a contract is subject to two or more reasonable interpretations, it is ambiguous. Where an ambiguity involves an exclusionary provision of an insurance policy, we must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.[5]

III.

General Star's policy provided commercial property insurance against "direct physical loss of or damage to Covered Property" resulting from "covered causes of loss" to buildings and business income. The policy's Building and Personal Property Coverage Form, in pertinent part, provides:

2. Property Not Covered
        Covered Property does not include:
                            * * *
            m. Underground pipes, flues or drains;
                            * * *

The policy's Causes of Loss—Special Form sets forth the "Covered Causes Of Loss" and "Exclusions," in pertinent part, as follows:

A. COVERED CAUSES OF LOSS
        When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
                1. Excluded in Section B., Exclusions; or
                2. Limited in Section C., Limitations; that follow.
B. EXCLUSIONS
        1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

                            * * *
            g. Water
                            * * *

                (3) Water that backs up from a sewer or drain; or

---

[5]*Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, 740-41 (Tex. 1998) (citations and quotations omitted).

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations; walls, floors or paved surfaces;

\* \* \*

2. We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \*

d. (1) Wear and Tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, this does not apply to any resulting loss or damage caused by elevator collision;

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if loss or damage by the "specified causes of loss" or building glass breakage results, we will pay for that resulting loss or damage.

\* \* \*

f. Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

In the same part of the policy, however, additional coverage may be extended by provisions which, in pertinent part, read as follows:

E. ADDITIONAL COVERAGE EXTENSIONS

\* \* \*

2. **Water Damage, Other Liquids, Powder or Molten Material Damage**. If loss or damage caused or resulting from covered water or other liquid, powder or molten material damage loss occurs we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which

the water or other substance escapes.

The definitions section of the Causes of Loss—Special Form, in pertinent part, provides:

F. DEFINITIONS

"Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

* * *

3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

IV.

Indisputably, the damages to the Meadowcrest Apartment foundations and buildings resulted from continuous or repeated seepage or leakage of water from underground sewerage and drain lines that occurred during a period in excess of 14 days prior to the loss.[6]  Section B(2)(f) provides: "We will not pay for loss or damage caused by or resulting from . . . [c]ontinuous or repeated seepage or leakage of water that occurs over a period of 14 days or more."  Consequently, coverage for the soil expansion damage that resulted from the continuous seepage or leakage of water in excess of 14 days is excluded by Section B(2)(f).[7]

Notwithstanding this exclusion, Unity argues that the policy contains an exception to a different exclusion that in effect extends coverage.  Section B(2)(d)(2) excludes coverage for loss or damage to covered property resulting from "[r]ust, corrosion, fungus, decay, deterioration, hidden

_____

[6] In fact, the seepage or leakage continued for one to six months prior to the loss.

[7] Furthermore, although not urged by General Star, coverage appears to be excluded by two other provisions. Section A of the Causes of Loss - Special Form provides that a covered cause of loss means risk of *direct* physical loss. The expansion of the soil, not the seepage or leakage of water, was the direct physical cause of the foundation damage. Section B(1)(b) excludes coverage for loss or damage by "[a]ny earth movement . . . such as . . . earth sinking, rising or shifting."

7

or latent defect or any quality in property that causes it to damage or destroy itself . . . ." There is evidence in the record from which a reasonable trier of the facts could find that the acidity of the soil caused the underground sewer and drain pipes to corrode and leak. Unity contends, however, that the last paragraph under Section B(2)(d)(7) provides for an exception to that exclusion which extends coverage. That paragraph states: "But if loss or damage by the 'specified causes of loss' or building glass breakage results, we will pay for that resulting loss or damage."[8]

Unity's argument must be rejected, however, because one of the essential elements upon which it depends is missing in the present case. The B(2)(d)(2) exclusion of coverage for loss or damage caused by corrosion in property that causes it to damage or destroy itself is inoperative here because the policy specifically provides that Covered Property does not include "underground pipes, flues or drains."[9] In other words, because the underground pipes were never included as covered property, their corrosion, self-damage, or destruction could not have been excised from coverage by the policy exclusions provisions. Consequently, because the Section B(2)(d)(2) exclusion does not apply in the present case, there is no possibility of there being an exception to or "repeal" of such an exclusion that would have the effect of extending coverage for "specified causes of loss" by the last paragraph under Section B(2)(7).

Unity further argues that General Star is required by the policy to pay for the cost of tearing out and replacing parts of the buildings necessary to repair the damaged or destroyed pipes beneath

---

[8] "Specified Causes of Loss" are defined by Section F, entitled "Definitions." For purposes of the present case, we will assume, without deciding, that Section F and the last paragraph under Section B(2)(d)(7) may be read together with Section B(2)(d)(2), when it is applicable to a case, to extend coverage to damage or destruction of property by a "specified cause of loss" otherwise excluded by the latter section.

[9] Building and Personal Property Coverage Form Section A(2)(m).

8

the buildings' foundations.[10] Unity relies on Causes of Loss—Special Form, Section E. "Additional Coverage Extensions," subsection 2, which, in pertinent part, provides: "If loss or damage caused by or resulting from *covered water . . .* damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes." (Emphasis added). However, the record contains no evidence indicating that the damage or destruction of the underground pipes resulted from water damage that was covered by the policy. Instead, the evidence in the record suggests that the damage and destruction of the pipes probably resulted from their corrosion and deterioration caused by the acidity of the soil. Nevertheless, Unity argues that the pipes were damaged or destroyed by "water damage" as defined by Section F, the "Definitions" section. Section F, however, cannot be used for that purpose for two reasons. First, Section F merely defines "Specified Causes of Loss." Unity does not explain, and we do not understand, how the damage or loss of the pipes could fall within any definition of a "specified cause of loss." A "Specified Cause of Loss" is a loss resulting from an excluded loss or damage to covered property to which, in certain circumstances, coverage is extended by an exception or "repeal" of the exclusion. The underground pipes are not included within covered property by the policy, and their damage or loss did not result from an excluded loss or damage of covered property. Second, the only "water damage" falling within the definitions of "Special Causes of Loss" is "accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam." Thus, even if the category

---

[10] Unity seeks only the estimated cost to access the pipes by tunneling, which appears to be substantially less than the amount required to gain access by tearing out and replacing concrete above the pipes. But Unity does not cite, and we have not found, a policy provision that requires General Star to pay for tunnel access to sub-foundation repair sites.

of "Special Causes of Loss" could be stretched to include the damage or loss of the underground pipes, that damage or loss would not be covered because it did not result from accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam. Instead, as we have already observed, the probable cause of that loss or damage to the underground pipes or drains was corrosion and deterioration caused by soil acidity.

Finally, Unity argues that General Star's course of conduct supports coverage. Unity claims that General Star has tendered payment for plumbing repair access costs in connection with similar claims in the past under the same insurance policy now at issue. Parol evidence is not admissible, however, to interpret the policy unless the court has found ambiguity in the contract.[11] Because the contract is not ambiguous in any pertinent sense, the parties' course of conduct cannot be considered to determine the meaning of the contract.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[11]*E. Montgomery County Mun. Util. Dist. No. 1 v. Roman Forest Consol. Mun. Util. Dist.*, 620 S.W.2d 110, 112 (Tex. 1981).