United States Court of Appeals
Fifth Circuit

**F I L E D**

June 12, 2003

Charles R. Fulbruge III
Clerk

REVISED JUNE 18, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-20344

_____

INSTONE TRAVEL TECH MARINE & OFFSHORE,

Plaintiff-Appellee-Cross-Appellant,

v.

INTERNATIONAL SHIPPING PARTNERS, INC.

Defendant-Appellant-Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Texas, Houston Division

_____

Before WIENER, BENAVIDES and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

I.

International Shipping Partners, Inc. ("ISP") is a Florida
corporation that provides passenger ship management services for
vessel owners. As part of its services, ISP provides crews and
makes travel arrangements to get the crew members to and from the
vessels. ISP contracted with Instone Travel Tech Marine &
Offshore ("Instone"), a Texas corporation, in a "Credit

Agreement", whereby Instone would supply ISP with airline tickets and related travel products and services.

Between June 23, 2000, and October, 2000, Instone provided ISP with approximately $52,000 worth of airline tickets that were never paid. ISP does not dispute that Instone is owed $52,000. ISP purchased the airline tickets, for which it was never reimbursed, on behalf of a now-defunct client, Premier Cruise Lines ("Premier"). ISP asserts that because it purchased the tickets from Instone in its capacity as an agent of Premier, Premier, and not Instone, is liable for the cost of the tickets. Instone, in turn, contends that the express terms of the Agreement between itself and ISP[1] require ISP to reimburse

---

[1]The Agreement between the parties consists of a two-page printed form prepared by Instone titled "Instone Travel Tech Marine & Offshore Credit Agreement," and a typewritten addendum titled "Additional Clauses to Instone Travel Tech Marine & Offshore Credit Agreement." Throughout the Agreement, "Client" refers to ISP, and "Contractor" refers to Instone. The Agreement, in part, reads as follows:

INSTONE TRAVEL TECH MARINE & OFFSHORE
CREDIT AGREEMENT

I. CHARGES – Upon approval of Client's Credit Application, Contractor shall open an account for the purchase of air transportation and related services by Client...The value of tickets and other documents and services purchased...will be charged to Client's account. For each transaction or service that results in a charge to Client's account, Contractor shall issue to Client an invoice...

II. CREDIT LIMIT – Contractor shall have the right to establish a credit limit for Client's account...

III. PAYMENT – Client will remit the amount of all charges and credits reflected on each statement within fourteen (14)

-2-

days of the statement date, and the remittance will be credited to Client's account.

IV.   SERVICE CHARGES FOR BILLING AND FOR LATE PAYMENT – ...
      ...
V.    REFUND OF TICKET OR OTHER DOCUMENTS – ...
      ...
VI.   REPRESENTATIONS AND WARRANTIES OF CLIENT – Client represents and warrants to Contractor the following:

      A.    <u>Contractor Acting As Agent</u> – Client has been advised by Contractor that, notwithstanding any other provisions of this Agreement,...Contractor is acting as an agent for the airline, carrier...or other service provider and becomes responsible for payment for the ticket or document immediately upon issuance to Client. Contractor's requirement to pay the vendor is unconditional and does not depend on Client's ultimate usage of the ticket or document.  Accordingly, <u>Client acknowledges that it is unconditionally obligated to pay Contractor for each ticket or document issued to Client hereunder.  Whenever a ticket or document purchased by Client hereunder is unused...Client acknowledges that it may seek to recover only from the carrier or service provider and not from Contractor.</u>

      B.    <u>Lost Tickets Or Documents</u> – ...
            ...

VII.  TERMIINATION AND SETTLEMENT – This Agreement shall continue in effect until terminated by either party... Contractor may, however, terminate it immediately...in the event of a default by Client....In the event there are unpaid charges in Client's account upon termination of this Agreement, Client agrees to remit the amount of such charges to Contractor immediately upon receipt of a statement therefor....

VIII.     SUBJECT TO LAW, TARIFFS AND CONDITIONS OF CARRIAGE –
          ...
      ...
IX.   EFFECTIVE DATE – ...
      ...
      *Additional clauses, as attached hereto, are deemed to be fully incorporated into this agreement.* [handwritten, followed by initials].

Instone even for those services that it purchased for the benefit of its clients in its capacity as an agent.

On October 19, 2000, Instone filed a breach of contract suit against ISP in the 11th Judicial District Court of Harris County, Texas. ISP removed the case to federal court on the basis of diversity jurisdiction. The district court granted summary judgment in favor of Instone, finding that the plain terms of the Agreement obligated ISP to reimburse Instone for the tickets. ISP appeals the district court's grant of summary judgment, and Instone cross-appeals the district court's refusal to grant attorneys' fees to fund a defense of this appeal.

II.

A district court's grant of summary judgment is reviewed *de novo*. *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.,* 308 F.3d 451, 458 (5th Cir. 2002); *Rivers v. Central and South*

---

[separate page]

<u>Additional Clauses to
Instone Travel Tech Marine & Offshore
Credit Agreement</u>

<u>CL V.  Add Sentence</u>      <u>REFUND OF TICKET OR OTHER DOCUMENTS.</u>
...
<u>CL. X. Add Clause</u>          <u>Client Acting As Agent</u>
Contractor acknowledges that client is acting as agent for an [sic] on behalf of certain vessels, vessel owners and/or Charterers.

(emphasis in original).

-4-

*West Corporation,* 186 F.3d 681, 682 (5th Cir.1999). Summary judgment is appropriate, when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of any material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *See also Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 576 (5th Cir. 2003). A material fact is one that "might affect the outcome of the suit under the governing law" and a "dispute about a material fact is 'genuine'...if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.,* 257 F.3d 449, 456 (5th Cir. 2001) (quoting *Anderson,* 477 U.S. at 248). Summary judgment is improper if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Quorum Health Res.,* 308 F.3d at 458.

Because the court's jurisdiction is premised upon diversity, and the contract provides that "[i]n the event of a dispute, this Agreement shall be construed and enforced according to the laws of the State of Texas," the substantive law of Texas applies. *Gen. Acc. Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.,* 288 F.3d 651, 653 (5th Cir. 2002); *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78-79 (1938).

III.

-5-

Instone is entitled to summary judgment if there is no genuine dispute of material fact regarding any of the elements of its breach of contract claim. *See Celotex Corp.,* 477 U.S. 317. A successful breach of contract claim consists of: (1) a valid contract, (2) performed by the plaintiff, and (3) breached by the defendant, (4) resulting in damage to the plaintiff. *Bridgmon,* 325 F.3d at 577; *Goss v. Bobby D. Assoc.,* 94 S.W.3d. 65, 68 (Tex. App. 2002).

ISP acknowledges the existence of a contract, and that Instone has incurred damages in the amount of $52,000. ISP contends, however, that its status as an agent, acknowledged in the Agreement, precludes it from being held financially responsible for the services that it purchased on behalf of its principals. ISP asserts that there was a genuine dispute of fact regarding its liability, and thus whether it's failure to reimburse Instone constituted a breach of the Agreement. In the alternative, ISP contends that the Agreement is ambiguous regarding its liability for products and services that it purchased on behalf of vessel owners. Thus, ISP concludes that summary judgment was improper.

A. Agency Immunity

It is well established that an agent acting for a disclosed

principal[2] is not liable for claims arising out of contracts executed by the agent on behalf of its principal.[3]  It is equally evident, however, that the parties to a contract may alter this general rule by agreement so that the agent *will* be liable on the contract.[4]  "The mere fact that an agency relationship exists does not preclude the imposition of personal liability on an express contract with a third party, even though the contract is primarily for the benefit of the principal."  *United States v. Gissel,* 353 F. Supp. 758, 779 (S.D. Texas, 1973), *aff'd*, 493 F.2d 27 (5th Cir. 1974).  "Where upon a construction of the contract it is determined that the agent has substituted his own responsibility for that of his principal, or has pledged his own responsibility in addition to that of his principal, he will be

[2]The question of whether ISP disclosed the identities of its principals (the vessel owners) and thus is even able to claim agency immunity in the first place, is a factual question that Instone conceded for the purpose of summary judgment.

[3]*Port Ship Serv., Inc. v. Norton, Lilly & Co., Inc.,* 883 F.2d 23, 24 (5th Cir. 1989); *Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Service, Inc.,* 800 F.2d 1418, 1420-1421 (5th Cir. 1986); *Atl. & Gulf Stevedores, Inc. v. Revelle Shipping Agency, Inc.,* 750 F.2d 457, 458 (5th Cir. 1985); *Lake City Stevedores, Inc. v. East West Shipping Agencies, Inc.,* 474 F.2d 1060, 1063 (5th Cir. 1973); *Bernson v. Live Oak Ins. Agency,* 52 S.W.3d 306, 309 (Tex. App. 2001); *Eppler, Guerin & Turner, Inc. v. Kasmir*, 685 S.W.2d 737, 738 (Tex. App. 1985); 3 Tex. Jur. 3d § 185 (2002).

[4]*George W. Bennett Bryson & Co., Ltd. v. Norton Lilly & Co., Inc.,* 502 F.2d 1045, 1049 (5th Cir. 1974); *Murphy v. Cain,* 711 S.W.2d 302, 304 (Tex. App. 1986).  *See Shaughnessy v. D'Antoni,* 100 F.2d 422, 424 (5th Cir. 1939).

bound accordingly.  His liability is not predicated upon his agency, but upon his contract obligations." *Vincent Murphy Chevrolet Co. v. Auto Auction, Inc.*, 413 S.W.2d 474, 477-478 (Tex. Civ. App. 1967) (quoting *American Nat'l Bank v. American Loan & Mortgage Co.,* 228 S.W. 169 (Tex. Comm'n App. 1921), and citing numerous Texas Court of Civil Appeals cases).  *See Eppler, Guerin & Turner, Inc. v. Kasmir*, 685 S.W.2d 737, 738 (Tex. App. 1985); *Richards Group, Inc. v. Stone Container Corp.,* 1997 WL 78916 *3 (Tex. App. 1997)(not designated for publication); 3 Tex. Jur. 3d § 186.

B.   The Agreement

Contract interpretation, including the question of whether the contract is ambiguous, is a legal question, subject to *de novo* review.  *Quorum Health Resources,* 308 F.3d at 458; *Fina, Inc. v. ARCO,* 200 F.3d 266, 268 (5th Cir. 2000).  In construing the Agreement, we are guided by general principles of contract interpretation under Texas law.  The court's primary concern is to give effect to the written expression of the parties' intent. *General Acc. Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.,* 288 F.3d 651, 653 (5th Cir. 2002); *Nat'l Union Fire Ins. Co. v. Care Flight Air Ambulance Serv., Inc.,* 18 F.3d 323, 328-29 (5th Cir. 1994).  In doing so, the court should read all parts of the contract together to ascertain the agreement of the parties, ensuring that each provision of the contract is given effect and

none are rendered meaningless. *Int'l Turbine Serv., Inc. v. VASP Brazilian Airlines,* 278 F.3d 494, 497 (5th Cir. 2002); *Petula Associates, Ltd. v. Dolcon Packaging Corp.,* 240 F.3d 499, 502 (5th Cir. 2001); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). "Texas law requires us to 'peruse the complete document to understand, harmonize, and effectuate all its provisions.'" *Kona Tech. Corp. v. S. Pac. Trans. Co.,* 225 F.3d 595, 610 (5th Cir. 2000).

      1.    Do the terms of the Agreement obligate ISP to reimburse Instone for purchases it made on behalf of vessel owners?

Instone maintains that the district court correctly concluded that the express terms of the contract unambiguously obligate ISP to pay for the purchases that it made on behalf of vessel owners. ISP, in response, maintains that such an interpretation fails to give effect to Provision X, where Instone acknowledged that ISP is acting as an agent for vessel owners. Provision X, it maintains, unambiguously releases ISP from liability.

From within the four corners of the contract, it appears that ISP did indeed agree to be held liable for the goods and services it ordered from Instone. The contract is entitled "Credit Agreement," and the entire agreement is concerned with establishing the parameters by which an account, in the name of ISP, is to be managed. The Agreement makes reference to the

Client's [ISP's] Credit Application, the establishment of the Client's credit limit, the requirement that the Client remit payment within fourteen days of each statement date, and the method by which refunds and service charges are to be added and deducted from the Client's account. The first provision of the contract contains a blank for the name of the Client. International Shipping Partners, Inc. is written in the blank. There is no language regarding credit applications, credit limits, or the management of accounts for ISP's principals. Furthermore, Provision VI.A., labeled "Representations and Warranties of Client," states, "Client acknowledges that it is unconditionally obligated to pay Contractor for each ticket or document issued to Client hereunder."[5] It is thus evident from the Agreement that Instone intended ISP to be obligated to pay for the goods and services that it ordered.[6]

---

[5]The district court, in supporting its conclusion that ISP bound itself to pay for each ticket or document, quotes portions of Provision VI.A. out of context. The court referred to that provision as stating "'notwithstanding any other provisions of this Agreement...[International] acknowledges that it is unconditionally obligated to pay Contractor for each ticket or document issued to Client hereunder.'" The phrase "notwithstanding any other provisions of this Agreement" actually modifies the portion of Provision VI.A. that continues "Contractor [Instone] is acting as an agent...and becomes responsible for payment for the ticket or document immediately upon issuance to the Client." ISP thus did *not* acknowledge an obligation to pay for the services provided "notwithstanding any other provisions of the agreement."

[6]This does not mean that Instone did not *also* intend for ISP's principals to be liable for the services purchased on their

a.    Provision VI.A.

ISP contends that despite its acceptance of liability in Provision VI.A., the fact that it does so in the midst of a provision that discusses *Instone's* status as an agent for airlines and other transportation vendors, and *Instone's* unconditional obligation to pay its vendors, mitigates the phrase's import.  While it would appear, given its placement, that Instone included the phrase requiring its clients (i.e. ISP) to accept liability for services rendered to guard against the possibility that a client would claim that it did not need to pay for tickets that were unused, lost, or issued for travel on carriers who subsequently halted service.

The phrase, however, was not modified by any statements that limited its applicability to such scenarios.  Instone's standard contract simply does not contemplate that a signatory would claim, after ordering and consuming the provided services, that it was not the party from whom Instone should seek payment.  In the end, although the phrase "Client acknowledges that it is unconditionally obligated to pay Contractor" may have been included in the Agreement in order to prevent a client from wriggling out of the duty to pay for the goods that it ordered for reasons other than those claimed by ISP, this is not a

---

behalf.  That is a question not raised by this appeal and which we do not address.

sufficient ground to disregard the clear import of the phrase.

b.    Provision X

ISP contends that the district court's grant of summary judgment holding it liable under the Agreement ignores the impact of Provision X, and thus violates the rule of construction that requires each provision of a contract to be given effect.  *See In re El Paso Refinery, LP,* 302 F.3d 343, 352 (5th Cir. 2002); *Int'l Turbine Serv.,* 278 F.3d at 497.

ISP argues that Provision X, which states, "Contractor acknowledges that client is acting as agent for an [sic] on behalf of certain vessels, vessel owners and/or Charterers," effectively substituted "International Shipping, as agent for its principals" for the term "Client" everywhere that "Client" appears in the Agreement.  In doing so, continues ISP, Provision X clarified that ISP would not only purchase services from Instone as an agent for vessel owners, but also signed the Agreement itself in its capacity as an agent for vessel owners. Thus, ISP concludes, the vessel owners on whose behalf it signed the Agreement are bound by its terms – not ISP.

ISP's interpretation of Provision X, however, requires two cognitive leaps that stretch the plain meaning of the provision a bit too far.  First, if ISP intended the term "Client" to mean, "ISP, as agent for its principals," then why did it not simply redefine the meaning of "Client" in Provision X instead of

cryptically stating "Contractor acknowledges that client is acting as agent..."? Alternatively, why did ISP not insert "as agent for its principals" next to its name in the blank that defines the meaning of "Client" in the first sentence of the Agreement?

Second, ISP's contention that Instone's acknowledgment of its status as an agent releases it from liability presupposes that an agent is necessarily *not* liable on a contract where the other party is aware that it is acting as an agent. The case law does not support such an argument. 3 Tex. Jur. 3d § 186 ("An agent may be personally liable on contracts made for the benefit of his or her principal...even where the principal is disclosed."). *See Nagle v. Duncan*, 570 S.W.2d 116, 117-18 (Tex. Civ. App. 1978) (holding attorney liable for fees due court reporter despite court reporter's knowledge that the transcript had been ordered for the client that the attorney represented); *Mediacomp, Inc. v. Capital Cities Communication, Inc.,* 698 S.W.2d 207, 209-211 (Tex. App. 1985) (holding media buyer liable to radio station for airtime purchased on behalf of disclosed client); *Kaiser Aluminum & Chemical Corp. v. M/V Zephyros*, 1994 WL 589711, *1-2 (E.D. La. 1994)(rejecting agent's argument that as a disclosed agent, it was not liable for the debts of its principal). As previously noted, the general rule that an agent is not liable for those contracts that it enters on behalf of a

-13-

disclosed principal is overcome when the agent expressly or implicitly accepts liability. *See infra* at n. 4. There is thus nothing inconsistent about the district court's decision to hold ISP liable under the Agreement in the face of Provision X's clear statement of ISP's status as an agent. *See Kaiser Aluminum & Chemical Corp. v. M/V Zephyros*, 1994 WL 589711, *1-2 (E.D. La. 1994)(rejecting agent's argument that as a disclosed agent, it did not become a party to the contract for services that were provided at its request for the principal). Holding ISP liable on the Agreement does not deny that ISP entered the Agreement as an agent for vessel owners, and thus does not render Provision X meaningless.

While we applaud ISP for its creativity, we do not find its interpretation of Provision X persuasive. Had ISP intended to sign the Agreement on behalf of its clients, there were myriad other, more direct methods of doing so than through the language of Provision X. ISP's status as an agent, alone, is insufficient to override the indicia of liability that pervade the Agreement. The district court did not err in finding that ISP bound itself in the Agreement to reimburse Instone for the tickets that it purchased on behalf of Premier.

2. Is the contract ambiguous?

ISP contends that because its interpretations of Provisions VI.A. and X are reasonable, the Agreement was ambiguous regarding

-14-

its liability, and summary judgment was inappropriate.[7] *See In re El Paso Refinery, LP,* 302 F.3d at 352 (noting that if a contract is ambiguous, a fact issue remains regarding the parties' intent). Instone responds that summary judgment was properly granted because the district court's interpretation of the provisions, and its ultimate conclusion that the Agreement requires ISP to reimburse Instone, was the only reasonable interpretation in the absence of inadmissible parol evidence.

Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered into. *In re El Paso Refinery, LP,* 302 F.3d at 353 (5th Cir. 2002); *Friendswood Development Co. v. McDade & Co.,* 929 S.W.2d 280, 282 (Tex. 1996). If the contract terms are susceptible to only one reasonable construction, the contract is unambiguous and will be enforced as written. *Guaranty Nat. Ins. Co. v. Azrock Industries Inc.,* 211 F.3d 239, 243 (5th Cir. 2000). "[A] contract is ambiguous only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain

---

[7]Instone contends that this is a new argument raised for the first time on appeal and is therefore waived. ISP, however, argued that the Agreement was ambiguous in its Motion for Rehearing/Reconsideration, dated February 22, 2002. This court has held that issues raised for the first time in post judgment motions are preserved for appeal. *New York Life Ins. Co. V. Brown*, 84 F.3d 137, 141 n. 4 (5th Cir. 1996); *First Nat'l Bank of Commerce v. De Lamaze,* 7 F.3d 1227, 1229 n. 9 (5th Cir. 1993). Accordingly, this issue is properly before the court.

-15-

which one of the two meanings is the proper meaning...". *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 519 (Tex. 1980).  A contract is not ambiguous because it suffers from mere "uncertainty or lack of clarity." *Madera Prod. Co. v Atlantic Richfield Co.,* 1998 WL 292872, *3 (N.D. Tex. 1998). "The failure to include more express language of the parties' intent does not create an ambiguity when only one reasonable interpretation exists." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996).

We find that the district court's interpretation of Provisions VI.A. and X is the only plausible interpretation. The first two pages of the Agreement between Instone and ISP are concerned with ensuring that the "Client"'s (ISP's) account is credit-worthy and properly managed.  In the final provision of the contract, Provision X, the Contractor acknowledges that the client is acting as an agent.  These provisions are unambiguous on their face.  Any claimed ambiguity in the document must therefore be latent.  *See Constitution State Ins. Co.,* 61 F.3d at 408 (explaining the difference between patent and latent ambiguities).  A latent ambiguity must become evident when the contract is applied to the surrounding circumstances. *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 38 Tex.Sup.Ct.J. 332, 1995 WL 92215, *2 (Tex. 1995).  Parol evidence of intent may not be admitted to create an ambiguity.  *Id; Constitution State Ins.*

-16-

*Co. v. Iso-Tex Inc.* 61 F.3d 405, 408 (5th Cir. 1995).

ISP points to the following as "circumstances" surrounding the contract's execution that support the reasonableness of its interpretation, and thus the ambiguity of the contract with respect to its liability: (1) Prior to contract execution, ISP notified Instone that Instone would not receive payment until ISP received payment from the vessel owners; (2) Instone asked for, and ISP provided, a list of the shipowners who would be paying the invoices;[8] (3) In prior dealings, ISP had instructed Instone that it acted as an agent and did not advance money or guarantee payments on behalf of its principals; and (4) Instone's representative acknowledged that he understood that ISP did not advance money or guarantee payments on behalf of its principals.[9] These are not "circumstances" surrounding the contract's execution, but parol evidence. *See, e.g., Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 591 (Tex. 1996) (noting that the fact that a "huge volume of gas

---

[8]Instone disputes this assertion.

[9]ISP also contends that ISP and Instone were careful to set up separate accounts for each separate shipowner. ISP has not set forth evidence substantiating this assertion with respect to Instone. Moreover, such activity implies that Instone intended to hold ISP's principals liable for their debts. It does not demonstrate that Instone intended to do so to the exclusion of ISP's liability under the contract, and is therefore not necessarily a "circumstance" indicating ambiguity regarding ISP's liability under the contract.

would be deregulated on a particular date" was a "circumstance" of the contract that could be properly considered in determining whether a gas contract was ambiguous).

Parol evidence is defined as "evidence given orally." Black's Law Dictionary 579 (7th ed. 1999). Seeing that ISP has not provided the court with any written documentation regarding the asserted "circumstances," we presume that they relate to oral exchanges between the parties. These assertions should therefore not be considered in determining whether the contract is ambiguous with respect to ISP's liability. *See* 36 Tex. Jur. 3d § 351 ("Absent fraud, accident, or mistake, the intent of the parties to a written agreement that is clear and unambiguous on its face must ordinarily be ascertained from the instrument alone, without the aid of extrinsic evidence"); *American Petrofina Co. of Texas v. Bryan,* 519 S.W.2d 484, 487 (Tex. Civ. App. 1975) ("Even if we assume that the Appellees were crying to the heavens that they would not be bound individually by the guaranty...the exclusionary rule controls as to this instrument."). *But see Mobil Exploration and Producing U.S., Inc. v. Dover Energy Exploration, L.L.C.,* 56 S.W.3d 772, 776 (Tex. App. 2001) (considering prior negotiations, the testimony of negotiators, and "all other relevant incidents bearing on the intent of the parties," while claiming fidelity to the rule barring consideration of parol evidence in determining the

question of ambiguity). Doing otherwise would nullify the requirement that parol evidence not be used to *create* an ambiguity, but only to *resolve* an acknowledged ambiguity. *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741 (Tex. 1998); *Standard Constructors, Inc. v. Chevron Chem. Co., Inc.,* 101 S.W.3d 619, 624 (Tex. Ct. App. 2003).

When properly confined to the four corners of the document, ISP's interpretation that Provision X releases it from liability under the Agreement is not reasonable. ISP's construction of Provision X's impact upon the remainder of the contract stretches the meaning of the phrase "Contractor acknowledges that client is acting as agent" beyond the logical import of the words. The Agreement unambiguously holds ISP responsible for the cost of all of the goods that it ordered, regardless of whether it did so on behalf of others. The district court properly granted Instone summary judgment on this basis.

IV.

Instone asks this court to either modify the judgment of the district court to include an award of appellate attorney's fees or to remand the case to the district court solely for entry of an additional award of appellate attorney's fees. Instone contends that it is entitled to such fees under the terms of the contract, which permit it to recover "its costs and attorney's fees" in the event that it utilizes the services of an attorney

-19-

to collect any debt owed under the Agreement. Instone states that it sought "attorney's fees" generally in its petition and in its motion for summary judgment, and attached an uncontested affadavit from its counsel testifying to the reasonable and necessary attorney's fees that would be incurred in the event of an appeal.

It is difficult to imagine how a district court's refusal to award appellate attorney fees before an appeal had even been taken could possibly be declared an error. Instone cites no cases in support of its argument. The issue of appellate attorney's fees is a matter for the district court following the resolution of an appeal. Now that we have ruled in favor of Instone, the matter is ripe for adjudication. We remand in order to allow the district court to make the initial determination and award of appellate attorney's fees.

## CONCLUSION

Since ISP was unable to raise a genuine issue of material fact regarding Instone's breach of contract claim, we AFFIRM the district court's grant of summary judgment in favor of Instone. We remand to the district court the question of appellate attorney's fees.